639 A.2d 929

**Frank FOSTER and Jewell Comer–Foster, his wife, Appellants,**

**v.**

**CITY OF PITTSBURGH,**

**v.**

**James PATTERSON.**

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 1993.

Decided March 17, 1994.

Petition for Allowance of Appeal Denied August 30, 1994.

Wendell G. Freeland, for appellants.

J. Russell McGregor, Jr., for appellees.

Before COLINS and SMITH, JJ., and DELLA PORTA, Senior Judge.

COLINS, Judge.

Frank Foster and Jewell Comer–Foster, his wife (the Fosters), appeal from a May 6, 1993 decision and order of the Court of Common Pleas of Allegheny County (Common Pleas), which denied the Fosters' motion for post-trial relief to remove a nonsuit granted to the City of Pittsburgh (Pittsburgh).

On August 9, 1990, at approximately 1:00 a.m., Frank Foster (Foster) was driving east on Hamilton Avenue, approaching the intersection with Fifth Avenue, in Pittsburgh. At the same time, James Patterson (Patterson) was driving his automobile south on Fifth Avenue, also approaching the Hamilton Avenue intersection. Patterson was driving at a high rate of speed in an attempt to illegally evade the Pittsburgh police vehicles that were chasing him. Foster legally crossed

into the intersection with the green light. Patterson, although faced with a red light, illegally continued into the intersection. Patterson's vehicle crashed into Foster's vehicle at the intersection, and Foster sustained serious personal injuries.

Foster filed a civil complaint against Pittsburgh in Common Pleas, alleging that Pittsburgh, through the actions of its police officers, was negligent in initiating and continuing a high-speed pursuit of Patterson's vehicle. The complaint also averred that the police officers were negligent in engaging in the high-speed chase without sounding a siren or other warning device.

Pittsburgh filed a timely answer to the Fosters' complaint. In its answer, Pittsburgh denied that its police officers were negligent and specifically averred that the police officers did utilize sirens and lights while pursuing Patterson's vehicle. Moreover, Pittsburgh asserted that Foster's accident and injuries were caused solely by Patterson's intentional and criminal acts. In addition to filing its answer, Pittsburgh also filed a complaint to join Patterson as an additional defendant. Patterson could not be located and was not served until January 4, 1993, at which time Pittsburgh served Patterson by publication. Patterson did not file any response to Pittsburgh's complaint.

The matter proceeded to trial before the Honorable S. Louis Farino on February 1, 1993. Patterson, although he was a defendant in the trial, failed to appear and was not represented by an attorney. During the trial, the Fosters called as witnesses Richard Smith, a motorist who viewed the accident, Frank Foster, and Officer Gordon McDaniel (Officer McDaniel), one of the police officers in pursuit of Patterson's automobile at the time of the accident. Smith and Foster testified that when the accident occurred, the police officer chasing Patterson, presumably Officer McDaniel, had not activated his flashing lights or his siren.

The Fosters then called Officer McDaniel to testify on direct examination. Officer McDaniel testified that he was operating his police vehicle over the speed limit at the time he

was pursuing Patterson's vehicle. The Fosters' attorney did not ask Officer McDaniel whether he had activated his lights or sirens while pursuing Patterson. On cross-examination, counsel for Pittsburgh asked Officer McDaniel whether he had activated his lights and sirens while pursuing Patterson's vehicle. The Fosters objected to the question as being beyond the scope of the direct examination. The objection was overruled, and Officer McDaniel was permitted to answer that he had activated his lights and sirens while pursuing Patterson's vehicle.

After the Fosters finished presenting their case, Pittsburgh moved for a compulsory nonsuit. Common Pleas granted the motion and dismissed the Fosters' claims against Pittsburgh. Thereafter, the jury returned a verdict against Patterson in the amount of $700,000.00. The Fosters filed a timely motion for post-trial relief in the form of a motion for removal of the nonsuit and for grant of a new trial. Common Pleas denied the Fosters' motion in an order dated May 6, 1993. The Fosters now appeal to this Court for review of Common Pleas' decision and order.

Our scope of review of a common pleas court's order denying a motion for removal of a nonsuit and for grant of a new trial is limited to ascertaining whether the court abused its discretion or committed an error of law which controlled the outcome of the case. *Wareham v. Jeffes,* 129 Pa.Commonwealth Ct. 124, 564 A.2d 1314 (1989). The Fosters raise three issues on appeal.

First, the Fosters contend that Common Pleas erred, when it permitted cross-examination of Officer McDaniel as to the status of his emergency lights and siren during his pursuit of Patterson's vehicle. The Fosters assert that this line of questioning went beyond the scope of their carefully limited direct examination of Officer McDaniel. In their view, Common Pleas, by permitting the disputed inquiry on cross-examination, allowed Pittsburgh to present a defense to the their claims during their case-in-chief. We disagree.

In their brief, the Fosters make clear that their aim in asking Officer McDaniel on direct examination about his high rate of speed when pursuing Patterson was to establish a violation of Section 3105 of the Vehicle Code (Code), *as amended*, 75 Pa.C.S. § 3105.[1] However, once the Fosters' pursued this line of questioning, which established that Officer McDaniel had operated his police vehicle at a high rate of speed, the question of whether his speed was excessive or justified was certainly relevant. On cross-examination, counsel for Pittsburgh merely permitted Officer McDaniel the opportunity to explain why the speed at which he had operated his police vehicle was not excessive. Officer McDaniel testified that he had activated his emergency lights and siren, which implied that his high rate of speed was neither excessive or negligent under the given circumstances. The question asked by counsel for Pittsburgh on cross-examination was, therefore, clearly relevant and within the scope of direct examination. Common Pleas properly overruled the Fosters' attendant objection to Pittsburgh's cross-examination.

 Moreover, Common Pleas' ruling permitting Pittsburgh to pursue this area of inquiry on cross-examination did

1. Section 3105 of the Code provides, in pertinent part:

(a) **General rule.**—The driver of an emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions stated in this section.
(b) **Exercise of special privileges.**—The driver of an emergency vehicle may:

. . . .

(3) *Exceed the maximum speed limits so long as the driver does not endanger life or property*, except as provided in subsection (d).

. . . .

(c) **Audible and visual signals required.**—The privileges granted in this section to an emergency vehicle shall apply only when the vehicle is making use of an audible signal and visual signals meeting the requirements and standards set forth in regulations adopted by the department, except that an emergency vehicle operated as a police vehicle need not be equipped with or display the visual signals. . . .

. . . .

(e) **Exercise of care.**—This section does not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons.

not allow Pittsburgh to present a "defense" during the Fosters' presentation of their case-in-chief. The Fosters' direct examination opened the door for Pittsburgh's inquiry during cross-examination. Common Pleas acted properly, when it permitted Pittsburgh to explore this area of inquiry on cross-examination.

Second, the Fosters argue that Common Pleas erred, when it granted Pittsburgh's motion for nonsuit, because they presented sufficient evidence on the issue of whether Pittsburgh was negligent to create an issue of fact for the jury to decide. The crux of the Fosters' argument is that if they can establish that Officer McDaniel did not activate his sirens or lights, they can prove negligence for which Pittsburgh would be liable. Recent decisions of both this Court and our Supreme Court, in cases with factual circumstances identical to the instant matter, weigh heavily against the Fosters' position.

Our Supreme Court, in *Dickens v. Horner*, 531 Pa. 127, 611 A.2d 693 (1992), held that the statute which is commonly referred to as the Political Subdivision Tort Claims Act (Act), 42 Pa.C.S. §§ 8541–8542, bars imposition of liability on a governmental agency for injuries sustained by a victim struck by a motorist who was unlawfully fleeing a police officer at a high rate of speed. The court in *Dickens* rejected the plaintiff's claim that the officer's decision to pursue the motorist was a proximate cause of the accident. Instead, the court concluded that the criminal act of the third party was the true cause of the accident, and the court would not impute liability to the municipality.

The Fosters argue that the instant matter is distinguishable from *Dickens*, because the plaintiff in *Dickens* had not established that the police officer had violated Section 3105 of the Code, 75 Pa.C.S. § 3105. We reject this argument for two reasons. First, *Dickens*, citing *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987), is based on the general principle that under the Act's general immunity provision, criminal acts of third parties are superseding causes which absolve a municipality from liability for the harm caused

by the third parties. Second, two recent decisions of this Court rejected attempts to impose liability on a municipality by establishing a violation of Section 3105 of the Code.

In *White v. Moto Laverda (S.R.L.)*, 152 Pa.Commonwealth Ct. 488, 620 A.2d 52 (1993), we were faced with a fact situation similar to those in both *Dickens* and the instant matter. In *White*, four plaintiffs sued the City of Philadelphia (Philadelphia) after being struck by a third party who disregarded a traffic signal while engaged in a high-speed chase with Philadelphia police officers. The plaintiffs alleged that Philadelphia's officers violated Section 3105(e) of the Code, 75 Pa.C.S. § 3105(e), because they did not operate their vehicles with due regard for the safety of all persons. We rejected the plaintiffs' position in *White*, because we concluded that *Dickens* controlled and prohibited the imposition of liability on the police officers, because the criminal act of the third party was an intervening cause which precluded the assessment of liability upon the police officers based on any alleged negligence.

Moreover, in *Conroy v. City of Philadelphia*, 152 Pa.Commonwealth Ct. 486, 620 A.2d 51 (1993), a case factually identical to *White* and decided the same day as *White*, this Court rejected the very same argument made by the Fosters. We held in *Conroy*, following *White* and *Dickens*, that even if Christopher Conroy had established that the police officers had failed to utilize flashing lights and sirens in violation of Section 3105 of the Code, Philadelphia could not be held liable.

Likewise, pertaining to the instant matter, we conclude that *Dickens, White,* and *Conroy* are controlling precedent. Their holdings preclude assessment of liability on Pittsburgh for the accident caused by Patterson's criminal acts. Therefore, even if we assume that the Fosters had established that Officer McDaniel did not have his emergency lights or siren activated, this fact would not create an issue of negligence for the jury to decide. Common Pleas did not err when it granted Pittsburgh's motion for a nonsuit against the Fosters.

Third, the Fosters posit that Common Pleas erred in granting Pittsburgh's motion for nonsuit, because the case

involved an additional defendant, Patterson. In its opinion, Common Pleas acknowledged that the general rule discourages the grant of a nonsuit in multi-defendant litigation. Nonetheless, Common Pleas, citing *Mazza v. Mattiace*, 284 Pa.Superior Ct. 273, 425 A.2d 809 (1981), reasoned that a grant of nonsuit in this particular case was appropriate, because Patterson's actions could not impose tort liability on Pittsburgh.

After reviewing *Mazza*, we conclude that Common Pleas' decision to grant a nonsuit despite the existence of an additional defendant was proper. We also note that the principle on which Common Pleas relied is also embodied in our Supreme Court's decisions in *Brazel v. Buchanan*, 404 Pa. 188, 171 A.2d 151 (1961), and *Liuzzo v. McKay*, 396 Pa. 183, 152 A.2d 265 (1959).

Accordingly, we affirm the order of Common Pleas.

### ORDER

AND NOW, this 17th day of March, 1994, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.

PELLEGRINI, J., did not participate in the decision in this case.

SMITH, Judge, dissenting.

I dissent from the majority's affirmance of the trial court's grant of nonsuit. The trial court granted nonsuit on the theory that Patterson cannot tortiously implicate the City under any set of circumstances because of the Pennsylvania Supreme Court's decision in *Dickens v. Horner*, 531 Pa. 127, 611 A.2d 693 (1992), which appears if read literally to afford carte blanche immunity to governmental units in all cases of injury caused by a third party fleeing from police pursuit. I disagree with the overly broad and plainly erroneous interpretation placed upon *Dickens* and would return this case to the lower court for trial on the merits.

Nonsuit may be granted only where a plaintiff has failed to establish a right to relief. Cases by this Court and the Supreme Court have indicated that nonsuit can be entered only in clear cases and a plaintiff must be given the benefit of all reasonable inferences of fact arising from the evidence; any conflicts in the evidence must be resolved in favor of the plaintiff. *Atlantic Richfield Co. v. Razumic,* 480 Pa. 366, 390 A.2d 736 (1978); *Robinson v. City of Philadelphia,* 149 Pa.Commonwealth Ct. 163, 612 A.2d 630 (1992). The trial court is also prohibited from granting nonsuit where a defendant offers evidence during the plaintiff's case or after it. *Id.* Where as here the Plaintiffs produce evidence in their case-in-chief which establishes that the Officer exceeded the speed limit and did not use his flashing lights and sirens at the time of pursuit and was therefore removed from the protections of Section 3105 of the Vehicle Code, *as amended,* 75 Pa.C.S. § 3105, the trial court was prohibited from taking the case away from the jury to decide a factual issue presented by the evidence, and in doing so to determine whether the City's negligence, if any, was the proximate cause of the injury to Plaintiffs.

The majority relies upon *Dickens,* decided under the vehicle liability exception to governmental immunity, 42 Pa.C.S. § 8542(b)(1), where the Supreme Court held that a governmental agency is immune from liability for injuries sustained by a victim struck by a motorist, believed to be driving without a license and under the influence of drugs, who was unlawfully fleeing a police pursuit at a high rate of speed. The Supreme Court concluded that the criminal act of a third party was the cause of the accident and liability may therefore not be imputed to the municipality. Relying upon *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987), the *Dickens* Court applied what it determined to be a general principle of governmental immunity law—criminal acts of third parties are superseding causes which absolve a municipality from liability for harm caused by those third parties. In a concurring opinion, Justice Cappy emphasized however that the decision in *Dickens* does not eliminate all liability

claims against a municipality where its own actions are the proximate cause of the injury.

In *Crowell v. City of Philadelphia*, 531 Pa. 400, 613 A.2d 1178 (1992), a case under the traffic controls exception[1] to immunity filed the same day as *Dickens,* the Supreme Court clearly stated that joint liability may be imposed upon a local agency where the action of the agency is a "substantial contributing cause" of the injuries sustained by a plaintiff. The fact that the driver in *Crowell* was operating his vehicle under the influence of alcohol, and later convicted, and thus engaged in criminal conduct at the time of the collision with plaintiff after following a wrongly-placed directional sign was insufficient to take the case away from the jury to decide whether active negligence by the City of Philadelphia in misplacing the sign constituted a substantial contributing cause of the injury. The Supreme Court rejected the city's contention that the drunken driver's conduct constituted a per se superseding cause and indicated that the criminal conduct is not dispositive of the city's liability—the question is whether the criminal conduct rises to the level of a superseding cause.

While conflict may appear to exist between the *Dickens* and *Crowell* decisions and it is for the Supreme Court to resolve those conflicts, if any, it is incumbent upon this Court to follow the most logical and rational expression of the law found in *Crowell* and in the concurring opinion in *Dickens*—municipalities are not afforded blanket immunity in each and every case where criminal acts of a third party may form a link in the chain of causation. The Supreme Court has not ruled that the principle stated in *Mascaro* shall be applied in all cases under the exceptions to governmental immunity and this Court should refrain from doing so. The Supreme Court specifically noted that *Mascaro* was grounded in statutory interpretation and intended to be applied to like situated cases.[2] The

1. 42 Pa.C.S. § 8542(b)(4).

2. The Court refused to hold the city or youth study center liable under the real estate exception where a juvenile offender escaped from detention, broke into the Mascaro home, and committed heinous crimes against members of the family. Mascaro alleged that because of

evidence in the case sub judice presents a factual basis from which a jury could find that the Officer failed to warn other drivers of the police pursuit by using his flashing lights and sirens and that this conduct constituted active negligence which was a substantial contributing cause of the accident.

Plaintiffs and their witness testified that flashing lights and sirens were not utilized by Officer McDaniel at the time of the accident, and during direct examination of the Officer called as a witness by the Fosters, they established that the Officer exceeded the applicable speed limit in violation of Section 3105 of the Vehicle Code. The trial court ruled that the City's cross-examination of the Officer concerning his use of flashing lights and sirens was permissible and did not constitute evidence of the City's defense during presentation of the Fosters' case-in-chief. In its opinion, the trial court acknowledged that once Plaintiffs showed excessive speed by the Officer, the emergency vehicle requirements became relevant. Thus cross-examination on this issue went specifically to the City's defense to the lawsuit. The trial court's evidentiary ruling was therefore incorrect; and because the record contains evidence by the City, the trial court erred in granting nonsuit and removing the case from the jury. *Robinson.* Rules regarding nonsuit are to be strictly enforced, *Atlantic Richfield,* and since the trial court erred in entering nonsuit, the court's order should be reversed and this case remanded for further trial proceedings.

negligent maintenance of the center's buildings, the juvenile was allowed to escape and injure the appellees.