Kent JONES, Sr., Individually and as Administrator of the Estate of Bridgett G. Jones, His Wife, deceased, Appellants,

v.

Officer Charles CHIEFFO and Commissioner Willie Williams, Mayor W. Wilson Goode, and City of Philadelphia and City of Philadelphia Police Department.

Commonwealth Court of Pennsylvania.

Argued May 10, 1995.

Decided Sept. 8, 1995.

Richard C. Ferroni, for appellants.

Alan C. Ostrow, Deputy City Solicitor, for appellees.

Before COLINS, President Judge, and DOYLE, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

SMITH, Judge.

Kent Jones, Sr., individually, and as Administrator of the Estate of Bridgett C. Jones, his wife, appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) that granted a motion for summary judgment in favor of City of Philadelphia (City) Police Officer Charles Chieffo, City Police Commissioner Willie Williams, Mayor W. Wilson Goode, the City and City Police Department (collectively, Appellees), and dismissed Jones' negligence action based upon the Supreme Court's decision in *Dickens v. Horner*, 531 Pa. 127, 611 A.2d 693 (1992).

The issue as presented by Mr. Jones is whether the trial court, in granting summary judgment to Appellees based upon *Dickens v. Horner*, committed error in that reasonable jurors guided by the legal principles recently enunciated in *Crowell v. City of Philadelphia*, 531 Pa. 400, 613 A.2d 1178 (1992), and *Powell v. Drumheller*, 539 Pa. 484, 653 A.2d 619 (1995), could find that the intervening criminal acts of a third person were neither extraordinary nor unforeseeable to the municipal defendants, whose affirmative negligence was a substantial contributing factor in causing the underlying accident in this case.

### I

Mr. Jones originally filed his Complaint in October 1991 to recover, among others, wrongful death and survival action damages and to recover for his personal injuries arising out of the automobile accident more fully discussed hereafter. Suit was filed against the Defendants in the United States District Court for the Eastern District of Pennsylvania. After discovery and summary judgment proceedings were conducted, the action was transferred, on the state claims, from the district court to the Court of Common Pleas of Philadelphia County in April 1994.

The parties entered into certain stipulations in connection with the district court summary judgment proceedings, offered as evidence in the matter sub judice for purposes of the court of common pleas summary judgment proceedings. The parties stipulated that if Officer Chieffo's police car had a working siren at the time of the accident, Mr. Jones would have heard the siren and avoided the accident. The parties further stipulated that the policy makers of the City of Philadelphia Police Department were aware that a number of police vehicles did not have working sirens and that some of them might be engaging in pursuits.

A review of the record demonstrates that there is conflicting evidence regarding what happened during the police pursuit which culminated in the accident causing Mr. Jones' injuries and the death of his wife. Officer Chieffo testified by deposition that shortly before 2:00 A.M. on November 12, 1989, while investigating a report of property damage to a vehicle, he observed three vehicles travelling in a line disregard a stop sign and turn from Lena Street onto Coulter Street, heading toward Germantown Avenue in the City of Philadelphia. The first vehicle was a burgundy color, the second a gray color and the third a white color. The vehicles made a left turn onto Germantown disregarding a red light.

When Officer Chieffo turned onto Germantown, he heard a gunshot and saw a muzzle flash of a shot fired from the passenger side of the second (gray) vehicle toward the first (burgundy) vehicle. He then activated his dome lights and attempted to activate the siren which did not work. The pursuit continued on Germantown for about thirteen blocks during which Officer Chieffo heard a second shot. While still on Germantown, Officer Chieffo was first able to inform his supervisor of the location of the pursuit. After thirteen blocks, Officer Chieffo lost sight of the lead (burgundy) vehicle but followed the gray and white vehicles. The gray vehicle ran a red light at the location where Hunting Park intersects Broad and Roosevelt. The white vehicle also proceeded through the same red light, but collided with

the vehicle driven by Mr. Jones, injuring him and killing his wife. Officer Chieffo then chased the driver of the white vehicle on foot and was able to apprehend him.

To the contrary, Mr. Jones testified at depositions that as he entered the intersection, he looked to his right and first saw the white car enter the intersection without headlights and then saw the police car, with lights flashing about fifteen to twenty feet behind the white car. Mr. Jones estimated that the white vehicle and the police car were travelling approximately 70 to 80 miles per hour. Mr. Jones applied the brakes, but could not avoid the white car, which made no attempt to swerve or slow down and struck the passenger door of Mr. Jones' car.

City Police Officer Lawrence Ritchie also witnessed the accident. Officer Ritchie testified he was about 35 feet from the intersection when he observed the white vehicle run the red light with the patrol car, with its dome lights on, approximately three to four car lengths behind. After the accident Officer Ritchie observed the patrol car pull up to the side of the white vehicle at which point he assisted in the foot pursuit of the driver.

City Police Lieutenant Herbert F. Groscsik testified that as a result of concern over exposure to lawsuits resulting from police pursuits, the City Police Department adopted Directive 45, which became effective August 26, 1985, more than four years prior to the accident in this case. Directive 45 requires that all pursuits, once initiated, be reported by radio to a supervisor who will evaluate the circumstances of the pursuit, determine whether the pursuit should be continued, and radio that decision back to the pursuing officer. In addition, Directive 45 requires that all patrol cars have sirens and that any police officer involved in a pursuit must operate the

emergency equipment at all times. City Police Captain Thomas Doyle, Officer Chieffo's commanding officer, testified that the pursuit should not have been initiated because the patrol car did not have a siren and that Officer Chieffo's supervising officer should have terminated it.

■■■ In granting summary judgment, the trial court relied on this Court's decision in *Foster v. City of Pittsburgh*, 162 Pa.Commonwealth Ct. 553, 639 A.2d 929 (Smith, J., dissenting), *appeal denied*, 538 Pa. 660, 648 A.2d 791 (1994), which cited *Dickens* as controlling precedent.[1] Consequently, the trial court held that even if the plaintiffs established that the pursuing officer did not have his lights and siren activated, this fact would not create an issue of negligence for the jury because the criminal act of the fleeing third party was a superseding cause which precluded the assessment of liability based upon any negligence of the police officers. The trial court was unpersuaded by Jones' contention that *Crowell*, decided the same day as *Dickens*, modified that decision by holding the City jointly liable with another tortfeasor for the City's negligence in misplacing a directional arrow which resulted in a fatal accident. The trial court distinguished the present case from *Crowell* on the ground that unlike *Dickens*, the Court in *Crowell* determined that the City's acts were a substantial factor in causing the plaintiffs' injuries.[2]

## II

■■■ Before this Court Jones contends that the trial court erred in granting summary judgment in view of the Supreme Court's recent decision in *Powell*, which he argues harmonizes *Dickens* with *Crowell* by

1. In *Dickens*, the Supreme Court held that the governmental immunity provisions found in 42 Pa.C.S. §§ 8541 and 8542, *as amended*, preclude imposition of liability on a municipal defendant for injuries sustained by a victim struck by a motorist who was unlawfully fleeing a police officer at a high rate of speed. This Court notes, however, that the facts in the present case, as in *Foster*, differ from those in *Dickens* in that the police officers involved in the chase in the present case, as in *Foster*, failed to sound a siren or other warning device to alert innocent passersby.

2. When reviewing an order granting summary judgment, this Court's scope of review is limited to a determination of whether there has been an error of law or an abuse of discretion. *Saft v. Upper Dublin Township*, 161 Pa.Commonwealth Ct. 158, 636 A.2d 284 (1993). In considering a motion for summary judgment, all well-pleaded facts in the non-moving party's pleadings must be accepted as true, and in order for the motion to be sustained, the case must be clear and free from doubt. *Id.* at 162, 636 A.2d at 286.

holding that the criminal act of a third person was not a superseding cause which relieves a municipal defendant from its own affirmative negligence where a jury could find that the intervening act of the third party was foreseeable to the municipal defendants. Conversely, Appellees' position is that the *Powell* decision does not affect the application of *Dickens* to cases involving injuries caused by the criminal acts of motorists fleeing police vehicular pursuit and that such criminal behavior, as a matter of law, supersedes any negligent conduct of the municipal defendant.

In *Dickens,* the Supreme Court, citing its earlier decision in *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987), noted that for purposes of all eight exceptions to governmental immunity, the negligent or criminal acts of third parties are superseding causes precluding the imposition of liability. In *Dickens,* Horner, the motorist fleeing police pursuit while allegedly under the influence of drugs, ran a stop sign at a high rate of speed and struck Dickens' vehicle causing her serious injuries. The *Dickens* Court, noting that the control of preventing the accident in that case was solely within the hands of Horner, held that neither the township nor the police officer could be held liable for Horner's criminal acts.

In *Crowell,* a case decided under the traffic control exception to governmental immunity, 42 Pa.C.S. § 8542(b), the Supreme Court clearly stated that joint liability may be imposed upon a local agency where the action of the agency is a "substantial contributing cause" of the injuries sustained by the plaintiff. The Court noted in *Crowell* that evidence of the defendant driver's intoxication at the time of the automobile accident and later conviction of driving under the influence, was insufficient to take the case away from the jury to decide whether the active negligence of the city in misplacing the directional sign followed by the defendant driver (as opposed to vicarious liability based

solely on the driver's criminal conduct as in *Dickens* ) constituted a substantial contributing cause of the injuries to the plaintiffs. The *Crowell* Court rejected the city's contention that the drunken driver's conduct constituted a per se superseding cause and indicated that the criminal conduct is not dispositive of the city's liability—the question is whether the criminal conduct rises to the level of a superseding cause.

The facts in *Powell* indicate that Drumheller, an intoxicated driver with a suspended license, while attempting to pass another vehicle on a two-lane road, steered his vehicle into the oncoming lane and struck and killed Powell who was driving in the opposite direction. Powell's widow brought a wrongful death action against Drumheller and the Department of Transportation (DOT) alleging joint liability for her husband's death. The plaintiff alleged that DOT negligently designed the road in that it had no centerline, no road markings or lines restricting passing and no shoulders or lateral clearance areas to provide room for emergency maneuvers. The trial court sustained DOT's preliminary objections alleging that Drumheller's intervening negligent and criminal acts prohibited the imposition of liability upon DOT because those acts did not come within the exceptions to sovereign immunity. This Court affirmed.

In *Powell* DOT relied on *Dickens* to support its position that Drumheller's criminal negligence was an intervening cause which superseded DOT's own negligence and relieved it from liability for Powell's death.[3] In rejecting this argument and reversing Commonwealth Court, the *Powell* Court reasoned:

> PENNDOT argues that *Dickens* stands for the proposition that an intervening force is a *per se* superseding cause whenever the intervening act is a criminal act. Thus, PENNDOT argues that Drumheller's criminal negligence in driving under the influence automatically relieves it of

---

**3.** Prior to *Powell,* this Court had consistently accorded *Dickens* a broad interpretation and had held that any criminal conduct of a motorist fleeing police pursuit is a superseding cause as a matter of law. *See Beck v. Zabrowski,* 168 Pa.Commonwealth Ct. 385, 650 A.2d 1152 (1994); *Angle v. Miller,* 157 Pa.Commonwealth Ct. 181, 629 A.2d 238 (1993); and *White v. Moto Laverda (S.R.L.),* 152 Pa.Commonwealth Ct. 488, 620 A.2d 52, *appeal denied,* 536 Pa. 635, 637 A.2d 295 (1993).

any liability from the accident.... *[W]e do not believe that Dickens stands for the proposition that any criminal negligence renders an intervening force a superseding cause. We have previously recognized that criminal conduct does not act as a per se superseding force....* Far from adopting any *per se* rule, in *Dickens,* we simply held that the undisputed facts showed that the conduct of the driver was so "extraordinary" as to constitute a superseding cause as a matter of law. *See* 57 Am.Jur.2d *Negligence* § 601 (1989)....

*In summation, we do not agree that any violation of a criminal statute constitutes a superseding cause. Instead, the proper focus is not on the criminal nature of the negligent act, but instead on whether the act was so extraordinary as not to be reasonably foreseeable.* This was our approach in *Crowell.* There, the City of Philadelphia similarly argued that the defendant driver's conviction for driving under the influence was a superseding cause that insulated the City from all liability. We rejected this argument and, instead, found that the driver's actions in following the misplaced sign were entirely "foreseeable." *Crowell,* 531 Pa. at 413 n. 12, 613 A.2d at 1185 n. 12. Therefore, we cannot conclude that as a matter of law that Drumheller's conviction for driving under the influence was a superseding cause.

*A determination of whether an act is so extraordinary as to constitute a superseding cause is normally one to be made by the jury. See* Mascaro v. Youth Study Center, 514 Pa. 351, 358–59, 523 A.2d 1118, 1122 (1987) (quoting *Ford v. Jeffries,* 474 Pa. 588, 596[,] 379 A.2d 111, 115 (1977)) ("[I]t was for the jury to determine whether the appellee's conduct, if it was negligent, was superseded by the intervening

force.") ... It is for the jury in the instant case to determine whether Drumheller's actions in attempting to pass a car while under the influence of alcohol thus crossing into Mr. Powell's lane were so extraordinary as to be unforeseeable to PENNDOT when designing the highway. Accordingly, we cannot say with certainty that no recovery against PENNDOT is possible.

*Id.,* 539 Pa. at 494–496, 653 A.2d at 624–625 (emphasis added).

By strictly limiting its decision in *Dickens* to the facts in that case, the *Powell* Court followed its broader reasoning in *Crowell* and held that a determination of whether intervening criminal conduct of third parties is so extraordinary and unforeseeable by the municipal defendant as to constitute a superseding cause, thereby relieving the municipal defendant of liability for injuries caused by its own negligence, is a fact-sensitive inquiry to be made by the jury on a case-by-case basis. Moreover, the Supreme Court has clarified any inconsistencies perceived between its holdings in *Crowell* and *Dickens.*[4]

In view of the Supreme Court's decisions in *Crowell* and *Powell,* it is clear that municipal defendants are neither afforded blanket immunity nor entitled to judgment as a matter of law in each and every tort claim where the victim's injuries were caused in part by intervening criminal conduct of third parties or where the criminal acts of a third party merely form a link in the chain of causation. Rather, it is for the jury to determine whether the municipal defendants' conduct was a substantial contributing factor in causing the victims' injuries and if so, whether intervening criminal conduct of third parties was so extraordinary as not to be reasonably foreseeable by the municipal defendants.

---

4. There is no legitimate basis for the contention that *Powell* is distinguishable from *Dickens* because *Powell* involves sovereign immunity while *Dickens* involves governmental immunity and, as a result, that municipal defendants are still afforded immunity from judgment as a matter of law in tort claims for injuries caused in part by the intervening criminal conduct of third parties. The rationale in *Powell* is equally applicable to cases involving governmental immunity. The Supreme Court specifically stated:

> We recognize that our decision in *Crowell* reaffirmed the principle of joint liability by concurrent causes in the context of our governmental immunity statute, but we find these principles equally, if not more so, applicable in this case involving sovereign immunity.

*Powell,* 539 Pa. at 491–492, 653 A.2d at 622. The Supreme Court was unequivocal in its decision, and the foregoing language demonstrates the Court's clarity on this point.

In the present case, there are genuine issues of material fact relating to whether Appellees' conduct in initiating and continuing the pursuit was negligent and amounted to a substantial contributing factor in causing the victims' injuries. The City stipulated that, for purposes of summary judgment, it was aware that many patrol cars used in police pursuits did not have working sirens and that if Officer Chieffo had a working siren on his patrol car, the Jones' vehicle would not have entered the intersection and the accident would have been prevented. If the jury does find that Appellees' conduct was a substantial contributing factor in causing the victims' injuries, the jury must then determine whether intervening criminal conduct of the fleeing suspects was so extraordinary as to be unforeseeable by Appellees, constituting a superseding cause precluding the imposition of liability upon Appellees. *Powell.*

In considering a motion for summary judgment, the trial court must examine the whole record, including the pleadings, any depositions, any answers to interrogatories, admissions of record, if any, and any affidavits filed by the parties. *Hibbs v. Chester–Upland Sch. Dist.*, 146 Pa.Commonwealth Ct. 556, 606 A.2d 629, *appeal denied*, 533 Pa. 602, 617 A.2d 1276 (1992). Because the trial court, in its review of the record, committed an error of law in granting summary judgment to Appellees, the court's order shall be reversed, and this matter is remanded for further proceedings consistent with the foregoing opinion.

### ORDER

AND NOW, this 8th day of September, 1995, the order of the Court of Common Pleas of Philadelphia County granting Appellees' motion for summary judgment is reversed, and this case is remanded for further proceedings consistent with the foregoing opinion. Jurisdiction is relinquished.

DOYLE and KELLEY, JJ., dissent.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. The majority, in finding that local agencies are liable for the criminal conduct of "others" in causing injury to another, ignores the clear language of 42 Pa.C.S. § 8541 that provides that a local agency shall not be liable for the "any act of ... any other person".

The majority holds that municipal defendants are not afforded immunity from judgment as a matter of law in tort claims for injuries caused in part by intervening criminal conduct of a third party, in this case, a suspect fleeing the police, relying on *Powell v. Drumheller*, 539 Pa. 484, 653 A.2d 619 (1995). Because *Powell* dealt with sovereign immunity rather than with governmental immunity, I believe that holding is inapplicable to this case. The reason *Powell* is inapplicable is the difference between the language of the Sovereign Immunity Act and the Political Subdivision Tort Claims Act, and, at its core, this case is one of statutory construction. In Section 8541 of the Judicial Code, 42 Pa.C.S. § 8541, entitled "Governmental immunity generally" governmental immunity is provided municipalities as follows:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof *or any other person.*

(Emphasis added).

In contrast, the corresponding section of the Sovereign Immunity Act as codified at Section 8521 of the Judicial Code, 42 Pa.C.S. § 8521, subheaded "Sovereign immunity generally", at issue in *Powell*, does not provide immunity for the acts of "any other person". It states that immunity is waived only for:

> Except as otherwise provided in this subchapter, no provision of this title shall constitute a waiver of sovereign immunity for the purpose of 1 Pa.C.S. § 2310 (relating to sovereign immunity reaffirmed; specific waiver) or otherwise.

Unlike the sovereign immunity provision,[1] the governmental immunity provision ex-

---

1. The courts have generally interpreted the Sovereign Immunity Act and the Political Subdivision Tort Claims Act consistently; however, where the language of the statutes differ, the

pressly limits liability to negligent actions of the local agency or employee but does not permit liability for damages caused by *the act of another person.* *See Powell,* 539 Pa. at 492 n. 4, 653 A.2d at 622–23 n. 4.

Our Supreme Court in *Powell* recognized this distinction in the statutory language when it commented on its previous decision in *Dickens,* a case establishing local agency liability for police chases, as follows:

> We noted the general rule 'that the criminal and negligent acts of third parties are superseding causes which absolve the original actor of liability for the harm caused by such third parties.' Accordingly, we held that the driver's criminal negligence, including driving without a license, not stopping when being pursued by a police officer, speeding through residential streets at 60 m.p.h., and ignoring a clearly marked stop sign, was a superseding intervening cause relieving the officer and the township of all liability.
>
> ... *As an initial matter it should be noted that Dickens was concerned with immunity under the particular language of our governmental immunity statute, rather than our sovereign immunity statute.* In any event, we do not believe that Dickens stands for the proposition that any criminal negligence renders an intervening force a superseding cause.... Far from adopting any per se rule, in Dickens, we simply held that the undisputed facts showed that the conduct of the driver was so 'extraordinary' as to constitute a superseding cause as a matter of law.

*Id.* at 494, 653 A.2d at 624 (emphasis added and citation omitted).

Applying the language of the Political Subdivision Tort Claims Act and the legislative

intent to insulate political subdivisions from tort liability, as stated in *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987), in *Dickens,* the Supreme Court stated:

> The acts of others are specifically excluded in the general immunity section and may not be imputed to the local agency or its employees and, in Mascaro, we held that the Legislature has clearly precluded the imposition of liability on itself or its local agencies for acts of third parties and that it has not seen fit to waive immunity for these actors or their acts in any of the eight exceptions.
>
> We viewed this conclusion as being consistent with the general rule that the criminal and negligent acts of third parties are superseding causes which absolve the original actor from liability for the harm caused by such third parties.

*Id.* at 130–31, 611 A.2d at 695. Specifically stating that these principles applied to the facts before it in *Dickens,* where Horner created the chase by not stopping when indicated by the police and then struck Dickens, the Supreme Court held:

> the legislative scheme consistently excludes all criminal acts from liability, including the acts of one such as Horner, who choses [sic] to defy a lawful order to stop his car and commits a series of crimes which terminate in inflicting serious injuries to an innocent bystander like Appellee.

*Id.* at 131, 611 A.2d at 695.[2]

Because the *Powell* analysis of *Dickens* is dicta, in that it attempts to square *Dickens* with the less strict language of the Sovereign Immunity Act, *Dickens* and *Mascaro* stand as good law.[3] If one applies the decision in

---

interpretations may diverge. *See Kiley by Kiley v. City of Philadelphia,* 537 Pa. 502, 645 A.2d 184 (1994).

**2.** Instead of overturning *Dickens,* the Supreme Court reaffirms it and then goes to great lengths in dicta to attempt to qualify the language of *Dickens.* *Dickens* stated *"all* criminal acts" preclude liability and that "criminal and negligent acts of third parties *are* superseding causes which absolve the original actor from liability". *Id.* at 131, 611 A.2d at 695 (emphasis added). The *Dickens* decision was not based on a su-

perseding cause analysis but on the legislative scheme set forth in the Act.

**3.** Dictum is language in a judicial opinion going beyond the issues raised or that is inapplicable to the facts of the case. 10 P.L.E. § 77; *Mt. Lebanon v. County Board of Elections of Allegheny County,* 470 Pa. 317, 368 A.2d 648 (1977). As in this case, an interpretation of a legislative act that is not applicable to the facts of the case is not controlling. *U.S. Steel Company v. County of Allegheny,* 369 Pa. 423, 86 A.2d 838 (1952). Even if statements by the Supreme Court are

that case and the language of the statute, the criminal acts of the driver of the white car in fleeing when the police officer indicated a lawful stop, in speeding and in entering the intersection, are a superseding cause of the harm to the Jones' and absolve the municipal defendants from liability. *Dickens,* 531 Pa. at 131, 611 A.2d at 695. Simply put, under 42 Pa.C.S. § 8541, local agencies cannot be liable for the acts of "others". To hold otherwise would be to read that language out of the Act.[4] Accordingly, I believe the decision of the trial court granting summary judgment to the municipal defendants should be affirmed.

entitled to great consideration, *id.,* dicta in *Powell* is not controlling on cases under the Political Subdivision Tort Claims Act where that act was not at issue in the case. While on the surface there are similarities between the Acts, they are more dissimilar than alike. For example, the limitation on damages and insurance set-off in 42 Pa.C.S. § 8553 as opposed to the amount in 42 Pa.C.S. § 8528, and the type of and scope of the exceptions to immunity found in 42 Pa.C.S. § 8542 and 42 Pa.C.S. § 8522. Even when it is the same exception, there are important differences, i.e., in the personal property exceptions 42 Pa.C.S. § 8542(b)(2) and 42 Pa.C.S. § 8522(b)(3). These differences reflect the differ-

ent responsibilities of local agencies and Commonwealth parties.

4. There is perhaps a better reading of the statute—that a municipality cannot be jointly and severally liable as a joint tortfeasor but can be liable for its own negligence. For example, in this case, if the jury found that the criminal actor was 50 percent liable and the municipal defendants were 50 percent liable, then the municipal defendants would be responsible for 50 percent of the judgment and not the criminal actor's portion of the judgment. This reading, however, has never been advanced or adopted in any of the cases.