## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donna P. Becknauld,          :
            Appellant    :
                         :
         v.                  :
                         :
Commonwealth of Pennsylvania,    :    No. 678 C.D. 2016
Department of Agriculture         :    Argued: December 12, 2016

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                          FILED: January 4, 2017

       Donna P. Becknauld (Becknauld) appeals from the Dauphin County Common Pleas Court's (trial court) March 31, 2016 order granting the Commonwealth of Pennsylvania, Department of Agriculture's (Department) Motion for Summary Judgment (Motion) and dismissing Becknauld's Complaint against the Department (Complaint). There are two issues before the Court: (1) whether the trial court erred by dismissing Becknauld's claim under the Family and Medical Leave Act (FMLA)[1] (Count II) because the Department only sought dismissal of Becknauld's claim under the Pennsylvania Human Relations Act (PHRA)[2] (Count I); and, (2) whether the trial court erred by failing to consider that Becknauld was "disabled" or "regarded as" disabled within the meaning of the Americans with

---

[1] 29 U.S.C. §§ 2601-2654.
[2] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951-963.

Disabilities Act (ADA)[3] Amendments Act of 2008 (ADAA)[4] when the ADA and PHRA are generally construed identically.[5]  After review, we affirm.

Becknauld worked as an executive secretary for the Department from June 2005 until her employment was terminated in the spring of 2009.  Becknauld was hired by the Department's Executive Secretary for the State Horse Racing Commission Ben Nolt (Nolt).  After the merger of the State Horse Racing Commission and Harness Racing Commission, Michael Dillon (Dillon) became the Department's Acting Executive Secretary of the State Horse and Harness Racing Commission and, thus, Becknauld's new supervisor.  In the fall of 2008, Becknauld told Dillon about her medical conditions and he encouraged her to go to human resources and discuss ADA and FMLA options.  *See* Reproduced Record (R.R.) at 111a-112a.

In January 2009, Becknauld submitted a Serious Health Condition Certification (FMLA Certification) to the Department's Human Resource Analyst Wendy Warner (Warner).  Becknauld's FMLA Certification was returned to her

---

[3] 42 U.S.C. §§ 12101–12213.

[4] The ADAA amended the definition of "disability," making it easier for an individual to establish that he or she has a disability under the ADA.  Disability is further defined herein. "Although . . . the ADAA[] made it easier to prove a disability, [Becknauld] must still show a substantial limitation.  *See* [Section 4a(1)-(2) of the ADA,] 42 U.S.C. § 12102(1)-(2)." *Cunningham v. Nordisk,* 615 Fed.Appx. 97, 100 (3d Cir. 2015).  Substantial limitation is also further discussed herein.

[5] Becknauld's Statement of Questions Involved included two additional issues: (1) whether the trial court erred in granting the Department's Motion under the PHRA because Becknauld had adduced sufficient evidence to establish a prima facie case for discrimination and there was sufficient evidence that Becknauld was pretextually terminated because of her disability; and (2) whether the trial court erred by granting summary judgment in the Department's favor on Becknauld's FMLA claim because Becknauld had adduced sufficient evidence to establish that the Department interfered with or retaliated against Becknauld for exercising her FMLA rights. However, because those issues are not addressed in the Argument section of Becknauld's brief, they are waived. *See In re Tax Claim Bureau of Lehigh Cnty. 2012 Judicial Tax Sale,* 107 A.3d 853, 857 n.5 (Pa. Cmwlth. 2015) ("[W]here issues are raised in the statement of questions involved, but not addressed in the argument section of the brief, courts find waiver.").

2

because it improperly listed two medical conditions (migraines and kidney disease). Becknauld was told to resubmit the Certification with only one medical condition. On March 27, 2010, Becknauld was notified that her employment would be terminated effective April 3, 2009, due to her "continued failure to accurately provide documents and support for Racing Commission meetings; issuing [sic] approvals to the industry without proper ratification from the appropriate Commission; and failure to submit leave for time away from work." R.R. at 255a. On April 3, 2009, Becknauld received a new FMLA Certification from her doctor, but she never resubmitted the Certification.

On September 28, 2010, Becknauld filed her Complaint with the trial court alleging PHRA and FMLA violations. In Count I, Becknauld averred a PHRA violation based on her disparate and negative treatment resultant of her disability. Becknauld claimed in Count II, an FMLA-retaliatory employment termination following her request for FMLA leave. The Department filed an answer with affirmative defenses. Becknauld responded to the Department's affirmative defenses. On June 30, 2014, the Department filed its Motion, a Statement of Material Facts and a brief in support of its Motion. Becknauld filed a response to the Department's Statement of Material Facts and a Counterstatement of Material Facts, and the Department responded thereto.

On January 5, 2016, the trial court held a hearing. On March 31, 2016, the trial court granted the Department's Motion, entered judgment in the Department's favor and dismissed Becknauld's Complaint. Becknauld appealed to this Court on April 28, 2016.[6] On May 2, 2016, the trial court issued an order

---

[6] "Our standard of review of the trial court's grant of summary judgment is *de novo* and the scope of review is plenary." *Robertson v. Port Auth. of Allegheny Cnty.,* 144 A.3d 980, 983 n.2 (Pa. Cmwlth. 2016). "In considering a motion for summary judgment, all well-pleaded facts in the non-moving party's pleadings must be accepted as true, and in order for the motion to be sustained, the

3

directing Becknauld to file a Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) (1925(b) Statement). On May 23, 2016, Becknauld filed her 1925(b) Statement. On May 27, 2016, the trial court filed its opinion.

Becknauld first argues that the trial court erred by dismissing her FMLA claim because the Department only sought dismissal of Becknauld's PHRA claim. Specifically, Becknauld contends that since the Department did not address the FMLA claim in its Motion, she did not address the FMLA claim in her response. The Department responds that its Motion and supporting brief referenced the FMLA and the circumstances of Becknauld seeking to qualify for an FMLA claim.

Initially, the Department's Motion does not refer to either the PHRA or the FMLA. The Motion, in its entirety, states:

> AND NOW this 30th day of June 2014, comes the [Department], by and through its counsel of record, Deputy Attorney General Timothy P. Keating who requests this Honorable Court to enter summary judgment in its favor and against [Becknauld] in the above[-]captioned matter pursuant to [Pennsylvania Rule of Civil Procedure No.] 1035.2 given that there are no genuine issues of material facts which, as a matter of law, would preclude the entry of judgment in [the Department's] favor, and against [Becknauld].

R.R. at 28a. With respect to the Department's supporting brief, the FMLA is mentioned in the following sections: Introduction, *see* R.R. at 30a; Factual Background, *see* R.R. at 32a-33a; Complaint, *see* R.R. at 7a; and Legal Discussion, *see* R.R. at 39a-41a. Those sections also discussed Becknauld's PHRA claim. Clearly, the Department was seeking dismissal of both claims/counts.

---

case must be clear and free from doubt." *Jones v. Chieffo,* 664 A.2d 1091, 1093 n.2 (Pa. Cmwlth. 1995), *aff'd*, 700 A.2d 417 (Pa. 1997).

Becknauld further asserts that even if the Department moved for dismissal of the FMLA claim, there was sufficient evidence in the record to permit the claim to proceed to trial. The Department responds that Becknauld's FMLA claim fails as a matter of law because Becknauld did not have a serious health condition.

Initially,

> [u]nder the FMLA, an employer may not 'interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided under this subchapter.' 29 U.S.C. § 2615(a)(1). Additionally, '[it] shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.' 29 U.S.C. § 2615(a)(2). 'The former provision is generally, if imperfectly, referred to as 'interference' whereas the latter is often referred to as 'retaliation.'' *Lichtenstein* [*v. Univ. of Pittsburgh Med. Ctr.*]*, 691 F.3d [294,] 301 [(3d Cir. 2012)] (citing *Callison v. City of Phila*[.]*, 430 F.3d 117, 119 (3d Cir. 2005)). In any event, . . . if [the employee] did not have a serious health condition, his claims fail as a matter of law.' . . . Specifically, [Section 102(a)(1)(D) of the FMLA,] 29 U.S.C. § 2612(a)(1)(D)[,] provides that an eligible employee shall be entitled to a total of twelve workweeks of leave during any 12-month period '[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'

*Bonkowski v. Oberg Indus., Inc.,* 787 F.3d 190, 195 (3d Cir. 2015). Section 101(11) of the FMLA defines "[s]erious health condition" as "an illness, injury, impairment, or physical or mental condition that involves-- (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11) (emphasis omitted). The FMLA Regulations provide, in relevant part:

> A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

5

(a) Incapacity and treatment. A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

. . . .

[(5)] (c) Chronic conditions. **Any period of incapacity or treatment for such incapacity due to a chronic serious health condition**. A chronic serious health condition is one which:

(1) **Requires periodic visits (defined as at least twice a year) for treatment by a health care provider**, or by a nurse under direct supervision of a health care provider;

(2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

. . . .

(f) Absences attributable to incapacity under paragraph (b) or (c) of this section qualify for FMLA leave even though the employee or the covered family member does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three consecutive, full calendar days. For example, an employee with asthma may be unable to report for work due to the onset of an asthma attack or because the employee's health care provider has advised the employee to stay home when the pollen count exceeds a certain level. An employee who is pregnant may be unable to report to work because of severe morning sickness.

29 C.F.R. § 825.115 (emphasis added).

Here, Becknauld's health care provider[7] signed her FMLA Certification stating that Becknauld had a **chronic condition requiring treatment**, and checked

---

[7] The heath care provider's name is illegible in the record. *See* R.R. at 262a.

the box stating: "**Condition requires periodic visits for treatment by a health care provider**[.]" R.R. at 262a (emphasis added). Specifically, Becknauld's health care provider declared: "[Becknauld] has kidney disease and is seeing nephrologist and internist . . . and chronic migraines - undergoing work up for kidneys." R.R. at 623a. Thus, for purposes of the Motion, Becknauld had a serious health condition under the FMLA.

Although Becknauld argues in her brief that the Department both interfered with and retaliated against her in violation of the FMLA, in her Complaint she specifically alleged:

> 37. **As a direct consequence** of requesting and/or taking FMLA leave, [Becknauld's employment] was terminated by the [Department].
>
> 38. The termination was baseless and **retaliatory** in nature.
>
> 39. As a result of the [Department's] unlawful **retaliation** in violation of the FMLA, [Becknauld] has suffered damages as set forth herein.

R.R. at 15a (emphasis added).

"To succeed on an FMLA retaliation claim, a plaintiff must show that '(1) [she] invoked [her] right to FMLA-qualifying leave, (2) [she] suffered an adverse employment decision, and (3) **the adverse action was causally related to** [**her**] **invocation of rights**.' *Lichtenstein,* 691 F.3d at 302." *Ross v. Gihuly,* 755 F.3d 185, 193 (3d Cir. 2014) (emphasis added).

> **Because FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law**. Accordingly, claims based on circumstantial evidence have been assessed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 . . . (1973), while claims based on direct evidence have been assessed under the mixed-

> motive framework set forth in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 276–77 . . . (1989) (O'Connor, J., concurring).

> *Lichtenstein,* 691 F.3d at 302. . . . [Becknauld] does not argue that h[er] retaliation claims are mixed-motive claims. The only question, therefore, is whether [Becknauld] is able to meet the shifting burdens of *McDonnell Douglas.*

> Under the *McDonnell Douglas* framework, **a plaintiff must first establish a prima facie case of discrimination. If the plaintiff succeeds, the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action. The burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination**.

*Ross,* 755 F.3d at 193 (emphasis added).

Becknauld maintains that there is ample evidence to show pretext: (1) a lost 2008 performance review; (2) contradictions in the reasons for employment termination; and (3) evidence that her leave days were disability-related. *See* Becknauld Br. in Response to the Department's Motion, R.R. at 153a-157a. However, the record does not support Becknauld's assertions. The record contains an email string between Becknauld and the Department's Human Resource Director Lana Adams (Adams) beginning March 31 and ending April 1, 2009 (the week between her discharge notification and the effective date of employment termination). Nowhere in the email string does Becknauld assert that she believes her firing was retaliatory for her attempted FMLA form submission.

Specifically, Becknauld begins the email to Adams by stating that she was on FMLA leave while employed and needs benefits under the Consolidated Omnibus Budget Reconciliation Act (COBRA)[8] for her health conditions (notably, not the conditions listed on her FMLA Certification). *See* R.R. at 272a. Adams

---

[8] 29 U.S.C. §§ 1161–1169.

informed Becknauld that she was currently employed and not on FMLA leave. *See* R.R. at 272a. Becknauld responded by admitting that her Certification was rejected because it contained two medical conditions. *See* R.R. at 270a. Becknauld then continued to admit that although the reasons for her employment termination were accurate, she did not believe they were worthy of discharge. *See* R.R. at 271a.

In her final email to Adams, Becknauld expressly declared:

I am piecing together all the reasons why [my employment] was terminated. I truly feel my Drs. appt. [sic] got in the way for one and also the email I made with The Meadows that George Crawford made such a stink about, which was ridiculous. It was taken out of context. **The bottom line** [sic] **there were individuals that wanted me out of there because I questioned things**. Who is to say [personnel representative] Charlene [Miller (Miller)] didn't delete one of my sick days because she is able to go into anyone's file on workplace and do it. I heard terrible things about her as it was [sic] what she has done to people. I am sorry to sound like this but what does it matter now. I am angry and she is not a good person. **She has wanted me gone for a long time just like** [**Nolt**]. [Executive Secretary] Daniel [Defano (Defano)] is another one. They both run that department. I KNOW I DID NOTHING WRONG! What hurts is that Mike Pechart, [the Department's then-Deputy Secretary] Russell [Redding] and [the Department's] Secretary [Dennis C.] Wolff who have believed in me[,] now think this about me. It is devastating to me! It makes me cry all over again.

I know I am an 'at will' employee and this is where everyone thinks they got me.

To think [] Dillon sat in that office on Friday and said he was dissatisfied [sic] with my work from day one, I wanted to stand up and scream – are you crazy. I bent over backwards to please him day in and day out. Not only that but in July of 2008 he gave me a satisfactory and outstanding evaluation. I ran into [the Department's Counsel] who use [sic] to work with him and he told me something is wrong with [Dillon] . . . and he sympathized with me. He said he thought he was . . . or something and

9

he also has a temper. I shared with him my experiences and the times he lost his temper with me, but I had no one to turn to because who would listen to me. [The Department's then-Director of Operations] Joe Mushalko saw it but he always just looked out for himself. [The Department's Counsel] totally understood and agreed [Dillon] has a problem. [Adams], I felt so alone in that department. [Deputy Executive Secretary] Cheryl [Cook] knew the problems I was having with [Dillon] also, but after awhile [sic] she didn't care. She only cared when I made a typing error on an agenda. Dear Lord, I am human.

I am sorry, I am venting. Thank you for your time. I will move forward eventually but right now I am very angry and hurt. I know [Defano] and [Miller] will get what is coming to them some day. [Miller] has hurt alot [sic] of people for no reason as I have been told. I will try to focus on the positive, as you recommended. Thank you and take care.

R.R. at 269a (emphasis added).

Moreover, nowhere in Becknauld's deposition transcript does she assert that the reasons for her discharge were pretextual. Rather, when questioned regarding specific reasons for her discharge, Becknauld routinely answered that she "did not recall," "did not remember" or "I don't know". R.R. at 239a-242a, 246a-247a. With the exception of referencing a document she filled out when she "was forming a discrimination case[,]"[9] Becknauld never alluded to any belief that she was fired because she sought family and medical leave. R.R. at 248a.

"[W]here a motion for summary judgment has been made and properly supported, **parties seeking to avoid the imposition of summary judgment must show by specific facts in their depositions, answers to interrogatories, admissions or affidavits that there is a genuine issue for trial**." *Marks v. Tasman,* 589 A.2d 205, 206 (Pa. 1991) (emphasis added); *see also* Pa.R.C.P. No. 1035.2(2) (emphasis added) ("if, after the completion of discovery relevant to the motion, including the

---

[9] Even in that document, Becknauld admitted to making too many typographical errors and forgetting to turn in leave slips. *See* R.R. at 248a-249a.

10

production of expert reports, **an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action** or defense which in a jury trial would require the issues to be submitted to a jury").

Here,

> the reasons for [Becknauld's employment] termination, as detailed in [her termination notice], were deficiencies that had existed since before [s]he [attempted to submit her] FMLA [Certification]. An employee cannot easily establish a causal connection between [her] protected activity and the alleged retaliation when [the reasons for discharge existed] before engaging in the protected activity. [Becknauld] has failed to establish a causal link here, and there was no error in granting summary judgment.

*Ross,* 755 F.3d at 194. Accordingly, we hold that there was insufficient record evidence to permit Becknauld's FMLA claim to proceed to trial.

Becknauld next argues that the trial court erred by failing to consider that she was "disabled" or "regarded as" disabled within the meaning of the ADA, when the ADA and PHRA are generally construed identically. Specifically, Becknauld asserts that she made out a prima facie PHRA claim because she alleged: she was disabled; otherwise qualified to perform her job; and, suffered an adverse action. The Department responds that Becknauld did not establish that she was "disabled" or as that term is defined - had a physical impairment that substantially limits one or more major life activities, or that Employer perceived that she had such impairment.

At the outset,

> [i]n order to make out a prima facie case of disability discrimination under the ADA and PHRA, a plaintiff must establish that s/he (1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability. *Gaul v. Lucent Techs. Inc.,* 134 F.3d 576, 580 (3d Cir.1998).

11

*Buskirk v. Appollo Metals,* 307 F.3d 160, 166 (3rd Circ. 2002) (footnote omitted).

Section 4(a) of the ADA defines "disability" as "(A) a physical or mental impairment **that substantially limits one or more major life activities** . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1) (emphasis added). "For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12101(2)(A).

> For purposes of proving ADA discrimination,[10] it is important to distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability. This distinction is important because the ADA requires employers to reasonably accommodate limitations, not disabilities. 'The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual.' 29 C.F.R. 1630.2(j), App. (1995); 42 U.S.C. § 12112(a)(5)(A) ('[T]he term 'discriminate' includes . . . not making reasonable accommodations to the known physical or mental *limitations* of an otherwise qualified individual with a disability. . . .') (emphasis added); 29 C.F.R. [§] 1630.9, App. (1995) ('Employers are obligated to make reasonable accommodations only to the physical or mental *limitations* resulting from the disability that is known to the employer.') (emphasis added).

---

[10] Although we are not bound in our interpretation of the PHRA by federal interpretations of parallel provisions, Pennsylvania courts generally interpret the PHRA in accordance with its federal counterparts. *Kelly v. Drexel Univ.,* 94 F.3d 102, 105 (3d Cir. 1996); *see also Imler v. Hollidaysburg Am. Legion Ambulance Serv.,* 731 A.2d 169, 173-74 (Pa. Super. 1999) ("The PHRA and ADA are interpreted in a co-extensive manner. This is because the PHRA and ADA deal with similar subject matter and are grounded on similar legislative goals. . . . Thus, we use as guidance the decisions of the federal courts to assist in the interpretation of the PHRA.").

*Taylor v. Principal Fin. Grp., Inc.,* 93 F.3d 155, 164 (5th Cir. 1996).

Becknauld contends that because she told Dillon about her medical condition and he advised her to look into her ADA and FMLA options, he regarded her as having such an impairment. However, having a medical condition and having a medical condition that limits one or more life activities is not the same. Although Dillon may have acknowledged the former, the record evidence is clearly lacking in proof that he believed and/or acted on the latter, and Becknauld failed to allege the latter in her Complaint.

Based upon the record, the trial court opined:

> Overall, aside from [Becknauld's] mere speculation and conclusory allegations, she has not provided any competent evidence that could lead a reasonable fact finder to believe that her 'kidney problems' substantially limit her in one or more major life activities or that [the Department] perceived her as being impaired. Accordingly, the [trial c]ourt finds that [Becknauld] has failed to adduce evidence to demonstrate a prima facie disability discrimination case and, thus, summary judgment in [the Department's] favor is appropriate. This Court also finds in the record ample nondiscretionary work performance issues, which preceded [Becknauld's] [employment] termination.

R.R. at 312a. We discern no error in this legal analysis.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

13

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donna P. Becknauld,           :
           Appellant     :
                           :
        v.               :
                           :
Commonwealth of Pennsylvania,   :    No. 678 C.D. 2016
Department of Agriculture       :

## O R D E R

AND NOW, this 4th day of January, 2017, the Dauphin County Common Pleas Court's March 31, 2016 order is affirmed.

_____
ANNE E. COVEY, Judge