588 A.2d 110

SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION
AUTHORITY, Appellant,

v.

Michael HUSSEY, Appellee.

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 1990.

Decided March 12, 1991.

Joan A. Zubras, with her, Marilyn Monaco and Karen Spencer Kelly, Ronald A. White, P.C., Philadelphia, for appellant.

Jack J. Bulkin, with him, Michael D. LaRosa, Jack J. Bulkin, P.C., Philadelphia, for appellee.

Before SMITH and BYER, JJ., and BARRY, Senior Judge.

SMITH, Judge.

This is an appeal from a decision of the Philadelphia County Court of Common Pleas which denied the post-trial motions for a judgment notwithstanding the verdict and in arrest of judgment filed by Appellant herein, Southeastern Pennsylvania Transportation Authority (SEPTA). The trial court's order is reversed.[1]

---

1. Although the record indicates that the verdict had not been reduced to judgment before the appeal, this Court shall review the merits of the appeal in the interest of judicial economy pursuant to this Court's authority under Pa.R.A.P. 105(a) and regard as done that which ought to have been done. *See McCormick v. Northeastern Bank of Pennsylvania,* 522 Pa. 251, 561 A.2d 328 (1989); *Rellick v. Redevelopment Authority of the County of Indiana,* 127 Pa.Commonwealth Ct. 264, 561 A.2d 382 (1989); *Commonwealth v. Allen,* 278 Pa.Superior Ct. 501, 420 A.2d 653 (1980).

Appellee, Michael Hussey, received injuries after being slashed by a knife or razor during a confrontation on the platform of a SEPTA subway station in the City of Philadelphia involving Hussey and two friends and some passengers of a SEPTA subway train that had just pulled into the station. Hussey initiated suit against SEPTA, and at trial presented evidence that the confrontation occurred within the direct sight and hearing of the SEPTA trainman who operated the train from which the combative passengers emerged. Hussey argued that SEPTA was negligent because the SEPTA trainman failed to keep the doors of the train closed or failed to close them expeditiously to prevent the escalation of violence;[2] that he failed to control the confrontation and assert his authority; that he failed to alert the canine police aboard another car of the train; and that he failed to enlist the aid of police, other SEPTA employees, or willing passengers to quell the altercation. Following the non-jury trial, a verdict was entered for Hussey in the stipulated amount of $20,000 in damages.

■ SEPTA argued in post-trial motions, as it had throughout trial, that it is immune from liability under the sovereign immunity provisions set forth in 1 Pa.C.S. § 2310, which provides in relevant part:

that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive immunity[,] ... [in which case] ... a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 ... unless otherwise specifically authorized by statute.

2. The confrontation began when one of Hussey's companions became involved in an argument with a passenger on the train prior to the trainman opening the doors so that these individuals were physically separated until the passenger was able to alight from the train.

Section 8521 of the Judicial Code, 42 Pa.C.S. § 8521, provides in part that "[e]xcept as otherwise provided in this subchapter, no provision of this title [Title 42] shall constitute a waiver of sovereign immunity for the purpose of 1 Pa.C.S. § 2310 ... or otherwise." This Court has held that SEPTA is a Commonwealth agency for purposes of the aforesaid sovereign immunity protections. *Chambers v. Southeastern Pennsylvania Transportation Authority,* 128 Pa.Commonwealth Ct. 368, 563 A.2d 603 (1989).

Although the trial court recognized SEPTA to be a Commonwealth agency protected by sovereign immunity, it found that a claim for damages could be asserted against SEPTA under the vehicle liability exception to sovereign immunity which is set forth in Section 8522(b)(1) of the Judicial Code, 42 Pa.C.S. § 8522(b)(1). That section provides:

> (b) Acts which may impose liability.—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

> (1) *Vehicle liability.*—The operation of any motor vehicle in the possession or control of a Commonwealth party. As used in this paragraph, 'motor vehicle' means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

The trial court concluded that the actions of the SEPTA trainman in opening the doors of the train and thereafter not closing them in an effectively timely manner, under the circumstances of the swelling altercation, involved the "operation" of the SEPTA vehicle. Therefore, the trial court decided that SEPTA is not immune from Hussey's claims. It is this decision that SEPTA appeals.[3]

3. Hussey also argued below that SEPTA was liable under the Commonwealth real estate, highways and sidewalks exception, set forth at 42 Pa.C.S. § 8522(b)(4), as well as under the vehicle liability exception. The trial court rejected this argument pursuant to *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987). See discussion

The trial court based its decision upon *Toombs v. Manning*, 835 F.2d 453 (3d Cir.1987), wherein the Third Circuit Court of Appeals, attempting to forecast how the Pennsylvania Supreme Court would interpret the vehicle liability exception under facts similar to the case *sub judice*, concluded that the "operation" of a SEPTA subway train includes the boarding from and discharge of passengers onto SEPTA platforms.[4] In *Toombs*, the plaintiff was injured while waiting for a SEPTA train at a subway station when he was attacked by two men within the sight of a SEPTA cashier and a SEPTA trainman. The plaintiff stumbled into the path of an oncoming train after being struck by his assailants and received serious injuries for which, under the Third Circuit's interpretation of the vehicle liability exception, SEPTA was liable.

It is clear, however, that the Pennsylvania Supreme Court would have reached a different result based upon its decisions in *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987) and related cases. In *Mascaro*, the Supreme Court, interpreting the real estate exception to local governmental immunity as set forth in 42 Pa.C.S. § 8542(b)(3), held that harm caused by third parties cannot be imputed to local agencies or their employees and that the real estate exception can be applied only to those cases where it is alleged that an artificial condition or a defect of the land itself causes the injuries. Thus, if the artificial condition or defect in the land merely facilitates an injury caused by the act of another, whose act is outside the scope of statutory liability, then the real estate exception to local governmental immunity does not apply. In more general language applicable to the case *sub judice*, the Supreme Court stated:

*infra* regarding the holding of *Mascaro* and its applicability to this case.

4. This Court has recently held that the "operation" of a vehicle for purposes of the vehicle liability exception to local governmental immunity, set forth at 42 Pa.C.S. § 8542(b)(1), includes the opening and closing of bus doors. *See Sonnenberg v. Erie Metropolitan Transit Authority*, 137 Pa.Commonwealth Ct. 533, 586 A.2d 1026 (1991).

We believe the Legislature has clearly precluded the imposition of liability on *itself* or its local agencies for acts of third parties by its language of [42 Pa.C.S.] § 8541 ... and that it has not seen fit to waive immunity for these actors or their acts in *any of the eight exceptions.*

Such a legislative judgment is wholly within the province of the Legislature according to our current interpretation of *sovereign* and governmental immunity ... and is consistent with the general rule that the criminal and negligent acts of third parties are superseding causes which absolve the original actor [the local agency] from liability for the harm caused by such third parties....

This is also consistent with the Legislative determination that the criminal acts, actual fraud, actual malice or willful misconduct of its *own* agency or employees acting within the scope of their duties are not the subject of suit or liability.... It would be incongruous, indeed, to shield the [local agency] from liability for the crimes of its agents or employees, but impose liability for the crimes of others. We believe, given the legislative scheme of immunity, that the [Political Subdivision Tort Claims] Act *consistently* excludes all criminal acts from liability, including the acts of criminals ... who take advantage of defects in municipal property to commit their own crimes. (Emphasis added, except in fourth line of the third paragraph, which is in the original; citations omitted.)

*Id.,* 514 Pa. at 363–64, 523 A.2d at 1124. *See also Chevalier v. City of Philadelphia,* 516 Pa. 316, 532 A.2d 411 (1987) (because injuries were caused by the criminal acts of a third party, the City of Philadelphia was immune from all liability for the harm caused by the third party).

Although *Mascaro* dealt with the interpretation of local governmental immunity provisions, the Supreme Court in *Snyder v. Harmon,* 522 Pa. 424, 562 A.2d 307 (1989) applied its *Mascaro* analysis to the real estate exception for sovereign immunity set forth at 42 Pa.C.S. § 8522(b)(4). In *Snyder,* the Court stated that both sovereign immunity and

local governmental immunity exceptions must be narrowly interpreted to achieve the express legislative intent to insulate the Commonwealth and its political subdivisions from tort liability. Therefore, even though the real estate exception for sovereign immunity is expressed in different language than the real estate exception for local governmental immunity, the two allow the same narrow application to causes of action alleging injury caused by an artificial condition or a defect of the land itself. *Id.*

By slight contrast, the language of the vehicle liability exception to sovereign immunity is *identical* to the language of the vehicle liability exception for local governmental immunity. *See* 42 Pa.C.S. § 8542(b)(1). It therefore follows that a Commonwealth party is not subject to liability under the vehicle liability exception to sovereign immunity for the criminal acts of third parties even if they were facilitated by the Commonwealth agency's operation of a vehicle. If, as the Supreme Court stated in *Mascaro* and *Chevalier*, the Legislature has not waived immunity for the acts of third parties under any of the local governmental immunity exceptions, including the vehicle liability exception, then it has not waived such immunity for a Commonwealth agency under the identically worded vehicle liability exception to sovereign immunity.

In the case *sub judice,* even if this Court assumes that Hussey has set forth a cause of action in negligence, under the common law or a statute creating a cause of action, if the injury were caused by a person not having available the defense of sovereign immunity (as required by 42 Pa.C.S. § 8522(a)), SEPTA is immune from liability because Hussey's injuries were caused by the criminal and tortious acts of a third person. The vehicle liability exception to sovereign immunity does not apply to the facts found in this case, and the trial court committed an error of law by holding that it did. For this reason, the trial court's order is

reversed.[5]

BYER, J., concurs in the result only.

## ORDER

AND NOW, this 12th day of March, 1991, the order of the Court of Common Pleas of Philadelphia County of December 20, 1989 is hereby reversed.

5.  Hussey contends that certain arguments made by SEPTA concerning its immunity have been waived because they were not advanced before the trial court. Although a review of the record indicates that Hussey's contention may not be entirely correct, it has been established that governmental immunity cannot be waived. *Tax Claim Unit of Northampton County v. Windrift Real Estate,* 522 Pa. 230, 560 A.2d 1388 (1989). Hussey's contentions are therefore meritless.