Earl L. BLACK, as Administrator of the Estate of Dwaine Black, and Mickey Black, Individually, Appellant,

v.

SHREWSBURY BOROUGH, Shrewsbury Borough Police Department, James Boddington, New Freedom Borough, New Freedom Borough Police Department, Clarence Morris and Southern Police Department.

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 1995.

Decided April 24, 1996.

---

5. By reason of our determination herein, we do not address the other issues raised by the County.

Thomas P. Lang, for Appellants.

F. Lee Shipman, for Appellee James Boddington.

Timothy I. Mark, for Appellees, Shrewsbury Borough and Shrewsbury Borough Police Department.

Before SMITH and PELLEGRINI, JJ., and NARICK, Senior Judge.

SMITH, Judge.

Earl L. Black, as Administrator of the Estate of his deceased minor son Dwaine, and Dwaine's brother Mickey Black (the Blacks) appeal from an order of the Court of Common Pleas of York County that sustained certain preliminary objections filed by various defendants in the Blacks' action against individual police officers, police departments and municipalities for claims arising from a police pursuit of an automobile driven by Joseph Black, cousin of Dwaine and Mickey. The pursuit ended with the car crashing into a utility pole, killing Dwaine Black and injuring the driver and Mickey Black.

The trial court partially sustained demurrers and dismissed all claims in Counts I through IV of the complaint except those based upon allegations of willful misconduct by the police officers.[1] The Blacks state the question involved as whether the allegations of Counts I through IV of their second amended complaint, exclusive of willful misconduct allegations, state a valid cause of action against the objecting defendants.[2]

I.

The Blacks' second amended complaint alleges that on September 8, 1990, at approximately 1:45 a.m., Officer James Boddington of the Shrewsbury Borough Police Department commenced a pursuit of a car operated by Joseph Black in which Dwaine Black and Mickey Black were passengers. The pursuit was joined by Officer Clarence Morris of the New Freedom Borough Police Department. During the pursuit the officers had probable cause to believe that Joseph Black, the driver, committed violations of sections of the Vehicle Code relating to stop signs and yield signs and to fleeing or attempting to elude police officers and also of a section of the Crimes Code relating to disorderly conduct. The officers had no probable cause to believe that Joseph Black had committed any felonies or to believe that either of the passengers had committed any offense.

The complaint further alleges that one or both of the pursuing officers were aware of the identity of the driver and the license number of the fleeing vehicle, that they knew that there were passengers in it and that they had had previous encounters with one or more of the occupants of the car in the course and scope of their police work. The pursuit continued along roads in or near the two Boroughs, along a dirt road, through a corn field, back on to a paved road and into Maryland, before the fleeing vehicle left the traveled portion of the road and collided with the utility pole.

---

1. The order appealed from is the trial court's ruling, dated March 27, 1995, on preliminary objections to the Blacks' second amended complaint. In its ruling on preliminary objections to the first amended complaint, dated May 18, 1994, the trial court denied objections to Count VI, which states a claim under 42 U.S.C. § 1983 for violations of the Blacks' civil rights. The defendants have not filed a cross-appeal as to that ruling at this time.

2. Following a petition by Earl Black and Mickey Black, the trial court timely amended its original order regarding the second amended complaint to include an express determination that an immediate appeal would facilitate resolution of the entire case. Pursuant to Pa.R.A.P. 341(c), as amended by the Supreme Court in 1992, an order dismissing fewer than all claims or parties, if accompanied by such an express determination or amended within 30 days of entry to include it, is appealable when entered.

The complaint alleges negligence, recklessness, willful misconduct and outrageous conduct on the part of the officers on various grounds, including: engaging in an unnecessary pursuit, in part over unfamiliar roads, at an unsafe speed for the existing circumstances and conditions, after the identity of the vehicle and driver had been ascertained and it was known that passengers were present; violating various provisions of the Vehicle Code; continuing the pursuit after one or both officers became angry and emotional; failing to request sufficient backup; engaging in willful misconduct by pursuing across state lines under these circumstances; and engaging in conduct constituting actual malice by continuing the pursuit of individuals with whom the officers had previous encounters, after the officers demonstrated anger toward the occupants. Counts I and II of the complaint are on behalf of Dwaine Black's Estate for wrongful death and survival; Count III is on behalf of Mickey Black for personal injury, and Count IV is on behalf of both Dwaine Black's Estate and Mickey Black against the municipalities claiming vicarious liability.

New Freedom Borough and its Police Department filed preliminary objections to the second amended complaint, demurring to Counts I through IV and essentially stating that the complaint failed to state claims against them because of their immunity under Section 8541 and Section 8542, *as amended*, of the Judicial Code, 42 Pa.C.S. §§ 8541 and 8542. Shrewsbury Borough and its Police Department asked to join those objections, with the names changed appropriately. Officer Boddington incorporated the others' objections and added that the complaint failed to plead sufficient facts to support the claims of willful misconduct. In ruling on the preliminary objections to the Blacks' second amended complaint, the trial court reaffirmed its ruling on objections to the first amended complaint, where the court reviewed the defendants' demurrers based upon *Dickens v. Horner*, 531 Pa. 127, 611 A.2d 693 (1992), in which the Supreme Court held, inter alia, that the vehicle exception to immunity does not apply where injuries are caused by the criminal acts of others.

In reviewing a ruling on preliminary objections, the appellate court must accept as true all material facts set forth in the complaint and all inferences reasonably deducible therefrom. A demurrer presents the question of whether, on the facts averred, the law says with certainty that no recovery is possible; where any doubt exists, it should be resolved in favor of overruling the demurrer. *Powell v. Drumheller*, 539 Pa. 484, 653 A.2d 619 (1995).

## II.

At the outset, the Blacks acknowledge the immunity granted to municipalities pursuant to Section 8541 of the Judicial Code. Section 8542(a) establishes as threshold requirements for exceptions to immunity that the damages would be recoverable against a person not having the defense of immunity and that the injury was caused by the negligent act of a local agency or its employee acting within the scope of employment. Section 8542(b) imposes liability as to certain enumerated actions, including "(1) *Vehicle liability.*—The operation of any motor vehicle in the possession or control of the local agency. . . ." They argue that an overly rigid application of *Dickens* is not warranted in view of other developments.

In *Crowell v. City of Philadelphia*, 531 Pa. 400, 613 A.2d 1178 (1992), a municipal employee mistakenly placed a traffic directional sign pointing left instead of right, and one night a driver under the influence of alcohol followed the sign and hit an oncoming car. The Supreme Court, interpreting the traffic control exception to governmental immunity, Section 8542(b)(4) of the Judicial Code, 42 Pa.C.S. § 8542(b)(4), held that a governmental unit may be subjected to liability despite the presence of an additional tortfeasor if the governmental unit actively contributes to the injury, that is, if its actions would be sufficient to preclude it from obtaining indemnity from another for injuries caused to a third person. Because the jury unequivocally found that the active negligence of the City's employee in wrongly placing the traffic sign was a substantial contributing factor to the accident, even though the driver's being under the influence may have been a concur-

rent cause, the Supreme Court reversed the trial court's grant of judgment to the City *non obstante veredicto.*

The Blacks also rely upon the recent holding of the Supreme Court in *Powell.* There a driver under the influence of alcohol, without a valid driver's license, attempted to pass another vehicle and collided with an oncoming car, fatally injuring the driver. The administrator of the decedent's estate named the Pennsylvania Department of Transportation (DOT) as a defendant, alleging negligent design of the highway. As the Blacks emphasize, the Supreme Court rejected DOT's assertion that *Dickens* held that an intervening force is a *per se* superseding cause whenever the intervening force is a criminal act:

> Far from adopting any *per se* rule, in *Dickens,* we simply held that the undisputed facts showed that the conduct of the driver was so "extraordinary" as to constitute a superseding cause as a matter of law....
>
> In summation, we do not agree that any violation of a criminal statute constitutes a superseding cause. Instead, the proper focus is not on the criminal nature of the negligent act, but instead on whether the act was so extraordinary as not to be reasonably foreseeable....
>
> A determination of whether an act is so extraordinary as to constitute a superseding cause is normally one to be made by the jury.

*Powell,* 539 Pa. at 494–495, 653 A.2d at 624.

The Blacks assert that the fleeing driver's conduct here, especially his speeding in flight over rural roads as opposed to the residential streets involved in *Dickens,* was not so extraordinary and unforeseeable as to constitute a superseding cause as a matter of law. Rather, under *Powell,* that determination should be for the jury. The Blacks note that this Court recently held that the question of whether another driver's crossing into a plaintiff's lane of traffic and causing her to leave the roadway was so extraordinary as to be unforeseeable by DOT must be decided by a jury; if the jury determines the other driver's conduct to be extraordinary and unforeseeable by DOT, then it would not be held liable to the plaintiff. *Fidanza v. De-*

*partment of Transportation,* 655 A.2d 1076 (Pa.Cmwlth.), *appeal denied,* 542 Pa. 677, 668 A.2d 1138 (1995).

Shrewsbury Borough, its Police Department and Officer Boddington (Shrewsbury Appellees) contend that the Blacks can not meet the threshold requirement of Section 8542(a) of stating a claim against them cognizable at common law because, under *Dickens,* the proximate cause of this accident was solely the criminal and negligent conduct of the driver Joseph Black. They assert that, as in *Dickens,* the driver here always had control of the situation and could have prevented the accident simply by obeying the law and stopping for the police. His failing to stop, traveling at high speed, entering a cornfield and traveling into Maryland to avoid apprehension permit only one inference: the driver's criminal conduct superseded any possible negligent conduct by the police.

In addition, the Shrewsbury Appellees assert that the complaint fails to state a claim falling within the ambit of the vehicle exception to governmental immunity in Section 8542(b)(1), citing *Southeastern Pennsylvania Transportation Authority v. Hussey,* 138 Pa. Cmwlth. 436, 588 A.2d 110 (1991), *appeal denied,* 530 Pa. 649, 607 A.2d 258 (1992). There this Court held that a claim against a transportation authority based on allegations of failure of a train operator to respond appropriately when a confrontation on a platform became violent did not fall within the vehicle exception, where the injuries were caused by the criminal and tortious acts of third persons, even if those acts were facilitated by the authority's operation of a vehicle.

New Freedom Borough, its Police Department and Officer Morris (New Freedom Appellees) also cite *Dickens* and *Hussey.* Further, they refer to *Chevalier v. City of Philadelphia,* 516 Pa. 316, 532 A.2d 411 (1987), where the Supreme Court held that criminal acts of a third party who attacked a plaintiff in a City-owned parking lot insulated the City from all liability for the harm caused by such party. In addition, the New Freedom Appellees note several decisions of

this Court relying upon *Dickens* that were decided before *Powell.*

First, the Court rejects the arguments based on *Hussey* and *Chevalier,* which in essence assume the desired conclusion. In the present case there is no question that the criminal conduct of Joseph Black was part of the cause of the injuries that occurred. The issue, however, is whether under the particular circumstances alleged the law says with certainty that Joseph Black's conduct was the sole legal cause, or stated another way, whether his conduct was so extraordinary as to amount to a superseding cause of the accident. Results in cases with very different circumstances are not helpful in deciding that issue.

This Court recently examined the question of the effect of *Crowell* and *Powell* on *Dickens* in the case of *Jones v. Chieffo,* 664 A.2d 1091 (Pa.Cmwlth.1995) (en banc). In *Jones* a police officer commenced pursuit when he observed three vehicles engaged in a chase and gun battle. The siren on the patrol car did not work, and it was stipulated that if the siren had been working, then an innocent motorist would not have entered an intersection where his car was struck by one of the pursued vehicles. The trial court granted summary judgment to the municipality on the rationale that the criminal conduct of the fleeing party was a superseding cause precluding liability based on any negligence by the police. This Court noted the holding of *Crowell* and the express limitation of *Dickens* by *Powell* and concluded:

> [I]t is clear that municipal defendants are neither afforded blanket immunity nor entitled to judgment as a matter of law in each and every tort claim where the victim's injuries were caused in part by intervening criminal conduct of third parties or where the criminal acts of a third party merely form a link in the chain of causation. Rather, it is for the jury to determine whether the municipal defendants'

conduct was a substantial contributing factor in causing the victims' injuries and if so, whether intervening criminal conduct of third parties was so extraordinary as not to be reasonably foreseeable by the municipal defendants.

*Jones,* 664 A.2d at 1095.

Although a fleeing motorist may, as in *Dickens,* engage in conduct so extraordinary as to be unforeseeable and a superseding cause as a matter of law if it results in injury, there can be no dispute that in some instances a fleeing motorist's conduct, although illegal, may not be "extraordinary" and is "foreseeable" within the meaning of *Powell.* The teaching of *Powell* and *Jones* is that the criminal act of flight is not in and of itself conduct so extraordinary as to constitute a superseding cause as a matter of law. In this Court's view, the facts in the case sub judice do not rise to the level of conduct so extraordinary and unforeseeable as to constitute a superseding cause as a matter of law sufficient to sustain a demurrer based on application of the immunity statute. Therefore, the determination of whether Joseph Black's conduct was extraordinary and unforeseeable must be left to the jury.[3] Accordingly, the trial court's order is reversed, and this matter is remanded for further proceedings.

### ORDER

AND NOW, this 24th day of April, 1996, the order of the Court of Common Pleas of York County is reversed, and this matter is remanded for further proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.

PELLEGRINI, Judge, concurring.

In my dissenting opinion in *Jones v. Chieffo,* 664 A.2d 1091 (Pa.Cmwlth.1995), *petition for allowance of appeal filed,* October 6, 1995, also a police chase case, I followed the

---

3. Contrast the facts in *Beck v. Zabrowski,* 168 Pa.Cmwlth. 385, 650 A.2d 1152 (1994), where the highly intoxicated driver fled from police and drove at high speed even after the pursuing officer stopped active pursuit and followed only at the speed limit, and the driver lost control in a turn and hit a utility pole with such force that it split his car in two pieces, which came to rest hundreds of feet apart. In that case there was no question that the accident was caused by the criminal acts of the fleeing driver, and this Court upheld the trial court's grant of summary judgment to the municipal defendants based on Sections 8541 and 8542 of the Judicial Code.

traditional "causation analysis" first employed in *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987), that 42 Pa.C.S. 8541 precludes a local agency liability for the "acts of others." In footnote 4, however, I suggested that a better interpretation would be that the language precluded joint and several liability and had nothing to do with precluding liability based on who caused the accident. I did not adopt that interpretation then because none of the case law suggests such an interpretation, and applying the traditional *Mascaro* causation analysis, I dissented. Because, after *Jones v. Chieffo* and the Supreme Court's decision in *Powell v. Drumheller*, 539 Pa. 484, 653 A.2d 619 (1995), the "causation" interpretation has been abandoned and the joint and severable liability interpretation is a better one, I join with the majority but write separately to explain why.[1]

One of the most basic elements of any negligence cause of action is some causal connection between defendant's negligence and plaintiff's injuries. It's simply not enough that the plaintiff prove that there is some "negligence in the air" to impose liability. For example, in *Mitchell v. City of Philadelphia*, 141 Pa.Cmwlth. 695, 596 A.2d 1205 (1991), a person who entered a defectively designed city pool dove into the water to help his six-year old niece but drowned. There was no showing that the trespasser was in any way physically hurt by the injury. Because the defect was not linked to the pool to any injury, it was not the "cause of his injury". *See also Downing v. Philadelphia Housing Authority*, 148 Pa.Cmwlth. 225, 610 A.2d 535 (1992), *petition for allowance of appeal denied*, 532 Pa. 658, 615 A.2d 1314 (1992). Most accidents have many causes, some negligent, but the test to determine whether it is a negligent cause for which the defendant can be held responsible is whether the defendant's conduct is a material element and a substantive factor in bringing about the plaintiff's injury. *Jones v. Montefiore Hospital*, 494 Pa. 410, 431 A.2d 920 (1981).

For a defendant to be liable, however, its negligence need not be the sole cause or the last or nearest cause, and there may be two or more causes which were material and substantial. The question of concurrent causation is normally one for a jury. *See Vattimo v. Lower Bucks Hosp., Inc.*, 502 Pa. 241, 254, 465 A.2d 1231, 1238 (1983) ("the jury might differ as to whether the hospital's conduct was a substantial cause of the remaining injuries, and thus, the case must go to the jury...."); *Powell v. Drumheller, supra.* When there are concurrent causes, the "joint tortfeasors" are each held to the full measure of damages if the other party is unable to pay, even if they acted independently if they caused a single harm. *See* 42 Pa.C.S. § 7102(b); *Charles v. Giant Eagle Markets*, 513 Pa. 474, 522 A.2d 1 (1987); *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.*, 398 Pa.Superior Ct. 264, 580 A.2d 1341 (1990), *petition for allowance of appeal denied*, 527 Pa. 673, 594 A.2d 659 (1991).

Unlike concurrent causation that can impose *joint* liability, when there is an intervening cause that may excuse the first tortfeasor's negligence, when a second cause, a subsequent one, intervenes, the question is under what circumstances does the intervening cause supersede the first tortfeasor's conduct and excuse liability. In determining whether an intervening force is a superseding cause, the test is whether the intervening conduct was so extraordinary as not to have been reasonably foreseeable. The essence of a superseding intervening cause is that it changes the fact situation at the time the defendant acted. *Powell v. Drumheller, supra.*

Those concepts of "concurrent causations" and "superseding intervening causes" are at

---

1. While not applying to this case because it is prospective only, since this incident, the waiver of immunity for vehicle liability for local agencies was amended so as not to waive immunity as to anyone fleeing apprehension or resisting arrest or knowingly aiding anyone in fleeing arrest. See 42 Pa.C.S. § 8542(b)(1). The local agency appears to be immune even when the police vehicle actually has contact with the fleeing suspect. The Act also specifically allows evidence to be admitted of plaintiff's misconduct, including but not limited to illegal possession of a controlled substance, firearms or ammunition. *See* Act 43 of 1995, approved July 6, 1995, effective September 6, 1995.

the core of our difficulties in determining the extent of commonwealth parties' and local agencies' liability when they are one of the substantial causes in causing the plaintiff's injuries but when there is also negligent conduct of a third party that was also a substantial factor in causing plaintiff's injuries. In *Mascaro v. Youth Study Center,* *supra,* the Supreme Court examined the liability of a local agency for its negligence when there was negligence of third parties. It did so by examining whether the local agency's conduct could be considered to have "caused" plaintiff's injuries.

*Mascaro* involved two juvenile offenders who escaped from a juvenile detention center. Both escapees immediately proceeded to burglarize the Mascaro home, rape and physically abuse the mother and daughter in the presence of the rest of the family. The husband/father, unable to live with the tragedy, committed suicide. The family brought suit against the local agency, claiming negligent maintenance of the detention center pursuant to Section 8542(b)(3) of what is commonly called the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8542(b)(3). Although concluding that the allegations of the complaint fell within the real property exception, and that a cause of action would exist if the local agencies were private parties, the court found that the liability was precluded because of the language of 42 Pa. C.S. § 8541 which provides:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or any employee thereof or any other person.

Our Supreme Court held that acts of the local agency or its employees which make the property unsafe for the purposes for which the property is regularly used are acts to which liability attaches, but since "[a]cts of others ... are specifically excluded in the general immunity section (42 Pa.C.S. § 8541) and are nowhere discussed in the eight exceptions," 514 Pa. at 362, 523 A.2d at 1124, the local agency was not held liable. The Supreme Court also reasoned that such a holding would be:

> Consistent with the legislative determination that the criminal acts, actual fraud, actual malice or willful misconduct of its *own* agency or employees acting within the scope of their duties are not the subject of suit or liability. 42 Pa.C.S. § 8542(a)(2), *supra.* It would be incongruous, indeed, to shield the city or center from liability for the crimes of its agents and employees, but impose liability for the crimes of others. We believe, given the legislative scheme of immunity, that the Act consistently excludes all criminal acts from liability, including the acts of criminals ... who take advantage of defects in municipal property to commit their own crimes.

*Mascaro,* 514 Pa. at 363, 364, 523 A.2d at 1124. *See also Dickens v. Horner,* 531 Pa. 127, 130–131, 611 A.2d 693, 695 (1992). *Mascaro's* holding then was that by providing that a local agency could not be held liable for the "acts of others" under 42 Pa.C.S. § 8541, was that all concurrent criminal acts were, as a matter of law, intervening superseding causes precluding any liability from being imposed on the local agency.

While *Mascaro* was based on the specific language contained in 42 Pa.C.S. § 8541 that precludes local agency liability for "acts of others", there is no such language in the parallel provision for commonwealth parties. 42 Pa.C.S. § 8521(a) provides that the former does not contain the "acts of others" language. 42 Pa.C.S. § 8521(a) provides:

> Except as otherwise provided in this subchapter, no provision of this title shall constitute a waiver of sovereign immunity for the purpose of 1 Pa.C.S. § 2310 (relating to sovereign immunity reaffirmed; specific waiver) or otherwise.

1 Pa.C.S. § 2310 provides:
[T]he Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such

cases as directed by the provisions of title 42 (relating to judiciary and judicial procedure) unless otherwise specifically authorized by statute.

Nonetheless, in *Moore v. Commonwealth, Department of Justice,* 114 Pa.Cmwlth. 56, 538 A.2d 111, 113, *petitions for allowance of appeal granted,* 520 Pa. 610, 553 A.2d 971 (1988), *appeals dismissed as improvidently granted,* 523 Pa. 418, 567 A.2d 1040 (1990), extended the *Mascaro* rationale and held that a commonwealth party could not be held liable for the criminal conduct of third parties. *See also Cheronis v. Southeastern Pennsylvania Transportation Authority,* 114 Pa.Cmwlth. 412, 539 A.2d 15 (1988); *Rippy v. Fogel,* 108 Pa.Cmwlth. 296, 529 A.2d 608 (1987).

In two cases decided the same day, the Supreme Court again addressed the government's liability when a third party was involved. In *Dickens v. Horner,* 531 Pa. 127, 611 A.2d 693 (1992), the plaintiff was seriously injured when an automobile traveling at a high rate of speed in a police chase struck her. The police officer initiated the chase because he believed that the actor (Horner) was driving under the influence of drugs and without a driver's license. Overturning the decision of the Commonwealth Court that the decision to initiate a pursuit and failure to exercise due care fell within the vehicle exception to immunity, the Supreme Court held that the criminal acts of third parties are causes which absolve the local government from liability for the harm caused by third parties. *Dickens* relies on *Mascaro's* ultimate holding that "the general rule [is] that the criminal and negligent acts of third parties are superseding causes which absolve the original actor from liability." *Dickens,*

531 Pa. at 130–131, 611 A.2d at 695. *See also White v. Moto Laverda (S.R.L.),* 152 Pa. Cmwlth. 488, 620 A.2d 52 (1993), *petition for allowance of appeal denied,* 536 Pa. 635, 637 A.2d 295 (1993).

The other case was *Crowell v. City of Philadelphia,* 531 Pa. 400, 613 A.2d 1178 (1992),[2] where the plaintiff's three-year old son was killed by a driver who crossed over the median divider at a curve in the road and struck plaintiff's vehicle. Just before the curve where the accident occurred, the traffic directional sign, erected by the City of Philadelphia, warned drivers that the road curved to the left when it, in fact, curved to the right. At the time of the accident, the driver was drunk and ultimately pled guilty to driving while intoxicated. As to the driver's criminal conduct of driving under the influence, the Supreme Court found that it did not insulate the city from liability from wrongly placing the traffic directional sign because there was no evidence offered at trial that the intoxication caused the driver to react differently than any other driver who came across the wrongly placed directional sign. As the court later explained in *Powell, Crowell* was based on the principle that the jury could have found that there was concurrent causation on the part of the city through the placement of the directional signs, and it was responsible for the damages incurred by the plaintiff.

Looking back, those two cases could be interpreted to enunciate a rule that a criminal act of a third party could still be considered an intervening superseding cause as a matter of law (*Dickens*), while if only ordinary negligence was alleged, that was a question for the jury (*Crowell*). In *Powell,* the

---

2. Because 42 Pa.C.S. § 8521(a) made no distinction between criminal and civil "acts of others", this court, in *Crowell v. City of Philadelphia,* 131 Pa.Cmwlth. 418, 570 A.2d 626 (1990), extended the *Mascaro* rationale to include non-criminal conduct, holding that governmental activity not only must be "a" cause of the accident, but must be "the" cause of the accident. If a third-party's negligence in any way contributed to the accident, then, the court reasoned, the governmental activity "itself" did not cause the accident. Before our Supreme Court reversed, in *Buschman v. Druck,* 139 Pa.Cmwlth. 182, 590 A.2d 53 (1991), *petition for allowance of appeal denied,*

532 Pa. 666, 616 A.2d 986 (1992), the court, overruling *Crowell* in part, concluded that the limitation on liability established by *Mascaro* should only apply to situations where the act of the third party is not merely a substantial factor in bringing about the injury, but is in the nature of a superseding cause to the negligence of the commonwealth party or local agency. While this court agreed that the criminal conduct vitiated governmental liability, it was unable to agree when and under what theory of ordinary negligence liability would be precluded based on third-party conduct.

court, in effect, made the standard for both civil and criminal negligence the same—for the governmental unit to escape liability, it must show that the intervening conduct was an intervening superseding cause.[3]

Here, again adopting the reasoning set forth in *Jones v. Chieffo, supra,* the majority holds that the criminal conduct of the driver was not an intervening superseding cause as a matter of law, but, under *Powell,* a question for the jury as to whether it constituted an intervening cause. Because I no longer believe the causation interpretation of 42 Pa. C.S. 8541 first enunciated in *Mascaro* and followed in *Dickens* is the best interpretation of that provision, I join with the majority.

However, still remaining is the meaning of the language that no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of "any other person". It was not answered in *Powell,* even though *Powell* recognized that this language made the issue of joint liability troublesome, at least in the governmental immunity context. While *Mascaro* analyzed this in terms of causation, making any criminal concurrent cause a superseding intervening cause for damages, there is an alternate and novel interpretation: *that it means what it says!*

42 Pa.C.S. § 8541 provides that the local agency is only *liable for its negligence and not that of others.* The words deal with liability, not with causation. By doing so, the General Assembly meant to eliminate joint tortfeasor liability; a local agency would only be liable for its apportioned share of damages and not the damages that were caused by the third party. If not interpreted in this manner, it would make the local agency liable for conduct of those not its employees and even for acts that do not fall within any of the exception, all of which is contrary to the purpose behind the enactment of the Tort Immunity Statute.

While not as clear, a similar interpretation could be made for commonwealth parties. 42 Pa.C.S. § 8521(a) and 1 Pa.C.S. § 2310 provide that the commonwealth continues to enjoy sovereign and official immunity and remains immune from suit except as the General Assembly shall specifically waive the immunity. Local agencies prior to the abolishment of judicially created tort immunity were subject to suit when engaged in proprietary actions, and for joint and severally liability for damages when third-party negligence was involved. Unlike local agencies, the commonwealth was never liable for any damages, including joint tortfeasor liability. By not waiving immunity for joint tortfeasor liability, a commonwealth party retains immunity from paying damages resulting from joint and several liability.

Because I believe the traditional causation analysis of 42 Pa.C.S. 8541 first used in *Mascaro* by our Supreme Court has apparently been abandoned, I join with the majority.

---

3. *See also Com., Dept. of Transp. v. Koons,* 661 A.2d 490 (Pa.Cmwlth.1995), where the estate of passengers sued PennDot when a vehicle in which they were passengers on a two-lane road and the driver attempted to pass a vehicle, traveled along the berm of the lane and struck a stone wall culvert. After striking the culvert, the vehicle went out of control, left the roadway and went down an embankment where it struck a stone pile and came to a rest. The passengers died from the injuries they sustained. The driver pled nolo contendere to three counts of homicide by vehicle and one count of driving under the influence. The estate sued contending that PennDot's failure to maintain the road resulted in a dangerous condition. Holding under *Powell* that the driver's criminal conduct could not be considered as a matter of law, the court held that whether it was an intervening superseding cause was a question of fact for the jury to decide, and PennDot was not relieved from liability simply because another concurring cause was also responsible for producing injury. *See also Fidanza v. Com., Dept. of Transp.,* 655 A.2d 1076 (Pa. Cmwlth.1995), *petition for allowance of appeal denied,* 542 Pa. 677, 668 A.2d 1138 (1995).