# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Duran Thomas,                               :
                            Appellant       :
                                            :
            v.                              :  No. 713 C.D. 2022
                                            :  SUBMITTED:  October 10, 2023
Hemlock Township, Hemlock                   :
Township Police Department,                 :
Scott Township, and Scott                   :
Township Police Department                  :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                     **FILED:  November 14, 2023**


            Duran Thomas appeals from an order of the Court of Common Pleas
for the 26th Judicial District, Columbia County Branch, which granted the motions
for summary judgment filed by Defendants, Hemlock Township and the Hemlock
Township Police Department and Scott Township and the Scott Township Police
Department,[1] and entered judgment in favor of Defendants and against Thomas.  As
this matter is controlled by *Sellers v. Township of Abington*, 106 A.3d 679 (Pa.
2014), we affirm.

            The pertinent facts are as follows.  On the evening of April 22, 2017,
and rolling into the next day, Thomas attended the Bloomsburg University Block

---

            [1] The Hemlock Township Defendants and Scott Township Defendants were, and continue to
be, separately represented.

Party[2] with Kenneil Pusey. Reproduced Record (R.R.) at 111a-12a. Thomas knew Pusey "from the street" and was aware that he had recently been released from jail. R.R. at 101a-02a. Thomas admittedly consumed alcohol that day and Pusey consumed both drugs and alcohol. R.R. at 115a, 255a.[3] In the early morning hours, Thomas, Pusey, and two other individuals left the Block Party to drive home to Wilkes-Barre, Pennsylvania. R.R. at 121a-22a. Pusey "jumped in" the driver's seat and Thomas then voluntarily got in the vehicle as well, despite Pusey's alcohol consumption and knowing that Pusey was not supposed to drive the vehicle, which belonged to Thomas's girlfriend's aunt. R.R. at 104a-05a, 109a, 122a.

At approximately 3:20 a.m., Scott Township Police Officers Robert J. Anderson and Brock Puterbaugh were monitoring traffic at an intersection when they observed a Volkswagen sedan drive straight through a turning lane. R.R. at 178a, 180a. While the Scott Township Officers observed that there were passengers in the vehicle at the time of this incident, they were not aware of who they were or that Pusey was driving. R.R. at 178a, 180a, 371a.

The Scott Township Officers began following the Volkswagen towards the I-80 on ramp, activating their emergency lights and sirens to initiate a traffic stop. R.R. at 178a-81a. The vehicle turned on its right blinker and veered off to the right berm as though to stop. R.R. at 178a, 180a. However, it then accelerated at a high rate of speed and entered I-80, having to brake hard and swerve to avoid striking another car. R.R. at 178a, 180a. The Scott Township Officers pursued the vehicle

---

[2] The Block Party weekend is typically busy for police officers as "thousands of college age kids . . . come to [] Bloomsburg." Reproduced Record (R.R.) at 369a. The event is known for people consuming alcohol and illegal drugs. R.R. at 369a, 379a, 384a, 416a.

[3] The toxicology reports confirm that Pusey was under the influence of both alcohol and illegal drugs at the time of the crash. R.R. at 255a, 342a.

2

onto the highway, which was dry and straight with no hills, and initially there were no other motorists visible. R.R. at 354a, 372a. The Volkswagen increased its speed to over 100 miles per hour (mph) despite the pursuing police car. R.R. at 18a, 180a. When questioned about Pusey's failure to stop, Thomas recalled Pusey stating that he did not want to go back to jail. R.R. at 322a.

The Scott Township Officers continued to pursue the vehicle with a goal of ascertaining the license plate number. R.R. at 178a. They notified Columbia County Communications that the vehicle failed to yield and that it continued to travel at high speed. R.R. at 178a, 180a. At approximately 3:24 a.m., Officer Kurt Henrie of the Hemlock Township Police Department joined the pursuit, pulling ahead of the Scott Township Officers and becoming the lead pursuit vehicle. R.R. at 178a, 180a. Officer Henrie was unaware that there were passengers in the Volkswagen when he joined the pursuit. R.R. at 226a-27a. The vehicle continued to increase its speed and distance from the officers and, after just a few minutes, Officer Henrie informed the Scott Township Officers that the Volkswagen was out of sight and there were other vehicles approaching on the highway. R.R. at 178a, 180a, 207a-08a. The pursuit was terminated immediately thereafter, with Officer Anderson notifying Communications of such at 3:26 a.m. R.R. at 178a-82a. The Officers then reduced their speed and deactivated their lights and sirens. R.R. at 180a. The Scott Township Officers' pursuit covered approximately six miles and lasted between four and six minutes. R.R. at 180a, 248a.

The Volkswagen continued driving along I-80 after the pursuit ended, approaching an exit ramp well in excess of 100 mph R.R. at 248a-57a. The vehicle attempted to maneuver around a truck but was unable to turn sharply enough to reach the exit ramp. The Volkswagen left the roadway, struck a tree, and flipped several

3

times, unfortunately resulting in Pusey's death and significant injuries to Thomas and the other passengers. R.R. at 254a, 420a. The Scott Township Officers, who had continued traveling along I-80, came across the accident at around 3:31 a.m., approximately six miles from where they were when they called off the pursuit. R.R. at 178a, 180a-81a.

Of particular importance herein, the Scott Township Officers testified that they had no knowledge of the identity of the driver or passengers in the fleeing vehicle. R.R. at 180a, 386a. More specifically, they did not know the relationship between the driver and the passengers, and were only able to obtain the first three letters of the Volkswagen's license plate. R.R. at 178a, 371a, 386a. For his part, Officer Henrie was unaware of any passengers in the vehicle. R.R. at 226a-27a.

Thomas filed his second amended complaint in October 2019, raising a single negligence claim. He asserted that Defendants' actions in turning a routine traffic stop for a "minor traffic violation" into a high-speed chase were wrongful, negligent, and careless, and that the improper high-speed chase caused the ultimate crash and Thomas's injuries. *See* R.R. at 17a-18a. Thomas alleged that he became a *de facto* prisoner or kidnapping victim in the vehicle, e.g., an innocent bystander, once the chase began. R.R. at 15a.

After the completion of discovery, both sets of Defendants moved for summary judgment based upon governmental immunity. *See* Sections 8541 and 8542 of the Judicial Code, 42 Pa.C.S. §§ 8541-8542. The trial court agreed, determining that pursuant to *Sellers*, Defendants did not owe Thomas a duty of care because his existence or connection to Pusey was unknown to the Officers at the

4

time of the pursuit. R.R. at 510a-11a. The trial court therefore granted Defendants' motions and Thomas then appealed to this Court.[4]

We begin with a brief discussion of immunity. Section 8541 of the Judicial Code provides, in general, that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. There are several exceptions to this grant of immunity, including the vehicle liability exception. An injured party may recover from a local agency if:

> (1) the damages would be otherwise recoverable under common law or statute creating a cause of action if the injury w[as] caused by a person not having available a defense under [Section] 8541[]; (2) the injury was caused by the negligent act of the local agency or an employee acting within the scope of his official duties[]; and (3) the negligent act of the local agency falls within one or more of the [] enumerated categories of exceptions to immunity, 42 Pa.C.S. § 8542(b). These exceptions must be construed strictly because of the clear legislative intent to insulate government from exposure to tort liability.

*Lindstrom v. City of Corry*, 763 A.2d 394, 397 (Pa. 2000).

---

[4] When reviewing a grant of summary judgment, an appellate court must examine the evidence of record in a light most favorable to the non-moving party, accepting as true all well-pleaded facts and reasonable inferences drawn therefrom. *Kuniskas v. Pa. State Police*, 977 A.2d 602, 604 n.3 (Pa. Cmwlth. 2009). "[S]ummary judgment is only appropriate where the record clearly shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Brown v. City of Oil City*, 263 A.3d 338, 342 n.1 (Pa. Cmwlth. 2021) (*en banc*), *aff'd*, 294 A.3d 413 (Pa. 2023). Where the non-moving party fails to adduce sufficient evidence on an issue which is not only essential to its case but on which it bears the burden of proof such that a jury could return a verdict in its favor, the moving party is entitled to judgment as a matter of law. *Young v. Dep't of Transp.*, 744 A.2d 1276, 1277 (Pa. 2000). "A jury can not be allowed to reach a verdict merely on the basis of speculation and conjecture." *Id.*

It is axiomatic that the primary element in any negligence cause of action is that "the defendant owes a duty of care to the plaintiff." *Althaus v. Cohen*, 756 A.2d 1166, 1168 (Pa. 2000). Therefore, the threshold issue to be determined here is whether Defendants owed a duty of care to Thomas under these particular circumstances. *See, e.g.*, *Lindstrom*, 763 A.2d at 397. Despite Thomas's argument to the contrary, "[t]he assessment of whether a duty of care is owed to a particular individual . . . is a matter for the courts to decide, not juries." *Sellers*, 106 A.3d at 688 [citing *Seebold v. Prison Health Servs.*, 57 A.3d 1232, 1247 (Pa. 2012)].

Thomas's main argument on appeal is that *Sellers* does not control with respect to the duty of care. He attempts to differentiate this matter in various ways, first by arguing that the cases are factually distinguishable. He further claims that *Sellers* applies only when a police officer is wholly unaware there is a passenger in the fleeing vehicle. Thomas maintains that there is evidence here suggesting that all of the Officers knew he was in the vehicle at the time of the pursuit. And finally, Thomas asserts that *Sellers* applies only when the pursuing officer lacks probable cause to believe the passenger was committing a crime. Thomas's Br. at 10.[5] Based on these purported differences, Thomas maintains that the controlling case is *Black v. Shrewsbury Borough*, 675 A.2d 381 (Pa. Cmwlth. 1996), and under that case Defendants owed him a reasonable duty of care. None of these arguments is availing.

As the trial court aptly notes, the facts here "are remarkabl[y] similar to" those of *Sellers*. R.R. at 511a. Just like the present matter, the plaintiff in *Sellers* spent the day drinking with several friends and then willingly got a ride home with

---

[5] At some points, Thomas tries to push the issue even further, asserting that *Sellers* applies only if the officer lacked probable cause to believe the passenger was connected to the offense precipitating the pursuit. *See* Thomas's Br. at 15-16; Thomas's Reply Br. at 12-13.

one of those individuals. 106 A.3d at 680. A police officer observed the vehicle in which the plaintiff was a passenger commit a traffic violation (speeding), after which the officer activated his lights and sirens and began a pursuit. *Id.* at 681. Just as in the instant matter, the officer in *Sellers* was in pursuit for only a brief period of time when he lost sight of the vehicle. *Id.* Also similar to this case, the officer in *Sellers* was unaware of whether there were any passengers in the vehicle *or their connection to the driver*, given that the vehicle was directly in front of him and the brevity of the pursuit. The officer received a radio call shortly after losing sight of the vehicle indicating that it had crashed. *Id.* While the driver in *Sellers* survived, the plaintiff unfortunately was thrown from the car and died due to his injuries. *Id.* Simply put, *Sellers* is factually on point.

Of even greater consequence, Thomas's legal argument is based on a flawed interpretation of *Sellers* and the extent of its holding. Thomas contends that *Sellers* is limited to situations where an officer is wholly unaware of any passengers in the fleeing vehicle, latching on to the Supreme Court's use of the phrase "unknown passengers." *See id.* at 689-90. There is no merit in this contention as the *Sellers* Court explicitly states: "The term 'unknown passengers' will be used throughout this [o]pinion to describe passengers whose presence in the vehicle *or connection to the driver* is unknown to the pursuing officer." *Id.* at 685 n.5 (emphasis added). The unmistakable holding in *Sellers* is, therefore, that an officer does not owe a duty of care to a passenger in a fleeing vehicle whose existence or whose connection to the driver is unknown to the officer at the time of the pursuit.[6]

---

[6] The utility of this holding was adeptly explained by the *Sellers* Court as follows:

Imposing a duty on officers to unknown passengers in a fleeing vehicle would present an unworkable burden on officers, essentially

**(Footnote continued on next page…)**

7

Moreover, the concurring opinion of (now) Chief Justice Todd makes this abundantly clear. Finally, there is nothing in the *Sellers* decision pertaining to whether a pursuing officer has probable cause to believe a passenger was committing a crime—indeed the pursuit in *Sellers*, like here, was for a traffic violation. Thomas's argument in this regard lacks merit.

As mentioned in footnote four *supra*, a party at the summary judgment phase cannot simply rest on his pleadings. Rather,

> a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

*Ertel v. Patriot-News Co.*, 674 A.2d 1038, 1042 (Pa. 1996). Here, Thomas has not come forward with any evidence to suggest that the Officers had knowledge of his connection to Pusey at the time of the pursuit.[7] The undisputed testimony and

---

halting police pursuits. The decision to pursue a fleeing vehicle is one that must be made in a matter of seconds. To require officers to not only establish the presence of passengers, but also discover the relationship of the passengers to the fleeing driver, would be unmanageable in the necessarily fast-paced environment of law enforcement. Moreover, officers, fearing the risk of civil liability, would be less likely to initiate pursuit, which would likely encourage criminals to flee.

106 A.3d at 689.

[7] Thomas argues that there is evidence here suggesting that Officer Henrie knew there were passengers in the vehicle at the time of the pursuit. He points to Scott Township General Order 4.2(B)(1)(d), which provides that an officer engaged in a vehicle pursuit is responsible for relaying pertinent information to Communications, including the "[n]umber of occupants and descriptions, if possible." R.R. at 402a. Again, we come back to the fact that mere knowledge of a passenger **(Footnote continued on next page…)**

8

evidence presented by Defendants demonstrates that in the brief few minutes between the traffic violation and the ultimate crash, the Officers were not aware of Thomas's relationship to the fleeing driver. As such, there is no genuine issue of material fact with respect to whether Defendants owed Thomas a duty of care.

Finally, we note that Thomas's reliance upon *Black* is misplaced. *Black* is procedurally distinguishable since it involved an appeal from a trial court order sustaining preliminary objections, while the instant matter is an appeal from a grant of summary judgment based upon an extensive, developed evidentiary record. This distinction is especially important since the plaintiffs in *Black* alleged

> that one or both of the pursuing officers were aware of the identity of the driver and the license number of the fleeing vehicle, that they knew that there were passengers in it[,] and that they had had previous encounters with one or more of the occupants of the car in the course and scope of their police work.

675 A.2d at 382. At the preliminary objections phase, the *Black* Court was required to accept these material factual allegations as true, further distinguishing the case from the instant matter. *Id.* at 383. Moreover, this Court's *Black* decision predated our Supreme Court's opinion in *Sellers*.

In sum, because Thomas was unable to establish the threshold requirement that Defendants owed him a duty of care, Defendants cannot be held liable for the accident caused by Pusey's intoxicated, high-speed driving.

---

is not determinative as to the issue of duty of care. Moreover, Thomas's argument ignores the express testimony of the Officers involved and is based solely upon his speculation that Officer Anderson must have relayed to Communications that there were passengers in the fleeing vehicle given the content of this General Order.

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Duran Thomas,                              :
                    Appellant            :
                                          :
        v.                                :    No. 713 C.D. 2022
                                          :
Hemlock Township, Hemlock                :
Township Police Department,              :
Scott Township, and Scott                :
Township Police Department               :

# **O R D E R**

AND NOW, this 14th day of November, 2023, the order of the Court of Common Pleas for the 26th Judicial District, Columbia County Branch, is hereby AFFIRMED.

_____

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita
